## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **ATLANTIC SEA ISLAND GROUP LLC**<br>**405 Lexington Avenue**<br>**New York, New York 10174,**<br><br>                   **Plaintiff,**<br>    **v.**<br><br>**SEAN T. CONNAUGHTON**<br>**Administrator**<br>**Maritime Administration, and**<br><br>**MARY E. PETERS,**<br>**Secretary**<br>**Department of Transportation,**<br><br>                **Defendants.** | )<br>)<br>)<br>)<br>)<br>)    **Civil Action No. _____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Atlantic Sea Island Group LLC ("ASIG") seeks declaratory and injunctive relief from the November 2, 2007 final decision by the Administrator of the Maritime Administration that designated the State of New Jersey as an "adjacent coastal State" for purposes of consideration of ASIG's application under Section 1508(a)(2) of the Deepwater Port Act, 33 U.S.C. §1501 et seq. ("DWPA"), for a license to construct the Safe Harbor Energy LNG Deepwater Port, an urgently needed facility for the unloading of liquefied natural gas to be built off the coast of the State of New York.

### PARTIES

1.    Plaintiff Atlantic Sea Island Group LLC is a Delaware corporation engaged in the business of owning, constructing, and operating a deepwater port, the Safe Harbor Energy port, that will receive, store, and re-vaporize liquefied natural gas ("LNG") and deliver natural gas to the existing infrastructure in the United States.

2.     Defendant Sean T. Connaughton is Administrator of the Maritime Administration.    Defendant Mary E. Peters is Secretary of Transportation.    Mr. Connaughton and Secretary Peters are sued in their official capacities only.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this lawsuit pursuant to 5 U.S.C. §§ 702, 704 and 28 U.S.C. § 1331.    This action arises under the laws of the United States, specifically the Deepwater Port Act and the Administrative Procedure Act.

4.     Venue is proper in this Court because the Maritime Administration and the Department of Transportation reside in this district.    28 U.S.C. § 1391(e)(1).

## STATEMENT OF THE CASE

5.     ASIG has applied for a federal license under the Deepwater Port Act to construct and operate the Safe Harbor Energy Liquefied Natural Gas Deepwater Port, to be located 13.5 miles south of Long Beach, New York and 19 miles from the coast of New Jersey.    This lawsuit challenges the decision of the Administrator of the Maritime Administration designating the State of New Jersey as a second "adjacent coastal State" for purposes of the Safe Harbor Energy application.

**Statutory Background**

6.     The Deepwater Port Act, 33 U.S.C. § 1501 et seq., establishes the procedures and substantive criteria for licensing the construction and operation of deepwater ports that will receive shipments of petroleum and petroleum products, natural gas, and liquefied natural gas.    A "deepwater port" is defined as a facility located beyond the coastal waters of any State.    33 U.S.C. § 1502(9)(A).

7.     In recognition of the importance of these infrastructure projects to the country's energy supply, the DWPA provides for submission of a single application for consideration by the multiple federal agencies with jurisdiction over aspects of the

2

project. It also establishes an accelerated, mandatory timetable within which the agencies must complete the required analyses of the environmental, safety, and national security aspects of the proposed project.  In particular, the law requires that all public hearings on the application must be held within 240 days of the submission of a completed application, and that the federal government's final decision on the application must be issued within 330 days of its submission.  33 U.S.C. §§ 1504(g), (i)(1).

8.      The DWPA provides that a license to construct and operate a deepwater port shall not be issued "without the approval of the Governor of each adjacent coastal State."  Id., § 1508(b)(1).  The law also provides that "[i]f the Governor [of an "adjacent coastal State"] notifies the Secretary that an application which would otherwise be approved pursuant to this paragraph, is inconsistent with State programs relating to environmental protection, land and water use, and coastal zone management, the Secretary shall condition the license granted so as to make it consistent with such State programs."  Id.  In essence, Section 1508(b)(1) gives the Governor of each State designated as an "adjacent coastal State" the ability to veto issuance of the federal license or to impose mandatory conditions that must be included within that license.

9.      Section 1508(a) establishes three pathways by which a State may be designated an "adjacent coastal State."  Section 1508(a)(1) provides that a State may be designated as an "adjacent coastal State" if it is: (a) directly connected by pipeline to the proposed deepwater port; or (b) located within 15 miles of the proposed port.

10.     Section 1508(a)(2) also provides a third pathway by which a State may petition for designation as an additional "adjacent coastal State":

> The Secretary shall, upon request of a State, and after having received the recommendations of the Administrator of the National Oceanic and Atmospheric

Administration, designate such State as an "adjacent coastal State" if he determines that there is a risk of damage to the coastal environment of such State equal to or greater than the risk posed to a State directly connected by pipeline to the proposed deepwater port. . . .

(Emphasis added).  Under the DWPA, "coastal environment" is defined as "the navigable waters . . . and the adjacent shorelines . . . ."  33 U.S.C. § 1502(5).  Under this definition, the "coastal environments" of New York and New Jersey extend three miles offshore.

11.     In recognition of the extraordinary nature of the power granted to an "adjacent coastal State" to veto or impose conditions on a federal license, Congress deliberately established stringent standards for designation of an additional "adjacent coastal State" under Section 1508(a)(2).  These limits are expressed through requirements that: (a) any petition for designation must be submitted within 14 days after publication in the Federal Register of Notice that an application for a deepwater port has been submitted, and the petition must be resolved within 45 days after its receipt; (b) the analysis of the petition is restricted to consideration of the risks to the "coastal environment" of the petitioning State and the State previously designated as an "adjacent coastal State" under Section 1508(a)(1); and (c) the risks to the "coastal environment" of the petitioning State must be shown to be "equal to or greater than" the risks to the "coastal environment" of the State designated under Section 1508(a)(1).  This comparative standard is extremely difficult for a petitioning State to satisfy, in light of the substantial volume of information about the effects on the coastal environment of the State designated under Section 1508(a)(1) that is submitted by the sponsor of the project, which is primarily set forth in the Application.

12.     In establishing the standard that must be satisfied for designation of an additional "adjacent coastal State," Congress expressly considered and rejected an

alternative that would have authorized such a designation based on a determination that the project would have a significant impact on the coastal environment of the petitioning State. The Conference Committee adopted the third pathway set forth in Section 1508(a)(2), which permits designation of an additional "adjacent coastal State" only if the petitioning State can carry the burden of showing that that "there is a risk of damage to the coastal environment of such State equal to or greater than the risk posed to a State directly connected by pipeline to the proposed deepwater port." H. Conf. Rep. No. 93-1605, 93rd Cong., 2d Sess. (Dec. 16, 1974), reprinted in 1974 U.S.C.C.A.N. 7622, 7636.

13.    Under the U.S. Coast Guard regulation that governs the processing of license applications for deepwater LNG ports, to facilitate the comparative evaluation of the risks to the "coastal environments" of the two States that is required by Section 1508(a)(2), the Governor of the petitioning State must submit "the facts and available documentation or analyses concerning the risk of damage to the coastal environment of the State" and must explain why he believes "the risk of damage to its coastal environment is equal to or greater than the risk" to the State directly connected by pipeline to the project. 33 C.F.R. § 148.217(b)(3)-(4).

14.    Under the DWPA, any State that is not deemed an "adjacent coastal State" may participate fully in the comprehensive environmental analyses that the federal agencies must conduct in deciding whether to license the proposed port, and the federal agencies are required by law to take the views of such a State into account. The DWPA expressly provides that any such State "shall have the opportunity to make its views known to, and shall be given <u>full consideration</u> by, the Secretary regarding the location, construction, and operation of a deepwater port." 33 U.S.C. § 1508(b)(2) (emphasis

added).  Such a State, however, does not have the power to veto or to impose binding conditions upon the federal license for the port that a State designated as an "adjacent coastal State" obtains.

**Delegations of Authority and Implementation of the Deepwater Port Act.**

15.    The Code of Federal Regulations contains only one rule governing designation of an additional "adjacent coastal State." 33 C.F.R. § 148.217(d) (2006). This rule was issued by the Coast Guard pursuant to authority delegated by the Secretary of Transportation.  It explicitly provides that the Coast Guard will exercise the authority to make such designations.  The Maritime Administration has not issued a rule that purports to give it the power to designate an additional "adjacent coastal State."

16.    The DWPA delegated implementing authority to the Secretary of Transportation, the Department in which the Coast Guard was located in 1974.  Congress recognized that the Coast Guard had the appropriate experience and expertise regarding navigational safety and marine environmental protection, which were its primary concerns with the construction and operation of deepwater ports.  See S. Rep. No. 93-1217, 93d Cong., 2d Sess. (Oct. 2, 1974), reprinted in 1974 U.S.C.C.A.N. 7529, 7536-37.

17.    Since the DWPA was adopted, the Commandant of the Coast Guard has exercised the authority to receive the application and supporting documents for a proposed port and to conduct the process by which multiple federal agencies conduct the necessary reviews.  The Coast Guard also has issued the principal implementing rules under which the statute is administered.  See 33 C.F.R. parts 148-150 (2006).

18.    On September 24, 1975, the Secretary of Transportation delegated to the Commandant of the Coast Guard the authority to carry out all functions and

responsibilities of the Secretary under the DWPA, except for a small number of functions that were expressly reserved to the Secretary. 40 Fed. Reg. 43,901 (Sept. 24, 1975). In this Delegation, the Secretary did not specifically reserve the authority to designate "adjacent coastal States" under either Sections 1508(a)(1) or 1508(a)(2).

19.    The Coast Guard promptly implemented the authority that had been delegated by the Secretary. For example, on March 12, 1976, a Coast Guard contractor issued a final Methodology Report to define the agency procedures for designating an additional "adjacent coastal State" under Section 1508(a)(2). Under this methodology, the Coast Guard would: (1) assess, based upon interpretation of the license applicant's data, independent risks to the coastal environments of the States directly connected by pipeline to the port; then (2) evaluate, based upon interpretation of data presented by the petitioning State, the validity of estimates of potential environmental damage it submits; and finally (3) compare the risks to the coastal environment of each State on a resource-by-resource basis. Arthur D. Little, Inc., "Methodology for Designation of Adjacent Coastal States," U.S. Coast Guard Report No. CG-WDWP-1-76, at 6.

20.    The comparative analysis required by Section 1508(a)(2) for designation of an additional "adjacent coastal State" is a complex undertaking that requires assembly and consideration of a substantial amount of evidence concerning various potential impacts on the coastal environments of the two States. For example, in February 1976, the Coast Guard referred to the National Oceanic and Atmospheric Administration ("NOAA") for comment the request of Florida for designation as an additional "adjacent coastal State" for the proposed Seadock deepwater port. On March 25, 1976, NOAA submitted a 233 page report analyzing whether the risk of harm to the coastal

environment of Florida was equal to or greater than the risk posed to the coastal environment of Texas, the "adjacent coastal State" connected to the port by pipeline.

21. As originally enacted in 1974, the DWPA applied only to ports for importation of petroleum and petroleum products. In the 1970s, only one deepwater port was licensed under the DWPA. The law essentially remained dormant for the next 25 years, until Congress amended the law in 2002 to include deepwater LNG ports.

22. During the dormancy period, in 1981 the Maritime Administration was transferred from the Department of Commerce to the Department of Transportation.

23. In 1997, the Secretary of Transportation revised the Delegations of Authority under the DWPA to set forth the respective authorities of the Commandant of the Coast Guard and the Administrator of the Maritime Administration. Organizations and Delegations of Powers and Duties; Delegation to the Commandant, United States Coast Guard and Administrator, Maritime Administration, 62 Fed. Reg. 11,383 (Mar. 12, 1997). At the time of these Delegations, both the Coast Guard and the Maritime Administration resided within the Department of Transportation. The Secretary delegated the following authority to the Commandant, codified at 49 C.F.R. § 1.46(s):

> (s) Carry out the following powers and duties vested in the Secretary by the Deepwater Port Act of 1974, as amended (33 U.S.C. 1501-1524):
>
> (1) The authority to process applications for the issuance, transfer or amendment of a license for the construction and operation of a deepwater port (33 U.S.C. 1503(b)) in coordination with the Administrator of the Maritime Administration.
>
> (2) Carry out other functions and responsibilities vested in the Secretary by the Deepwater Port Act of 1974, as amended (33 U.S.C. 1501-1524), except as reserved [to the Secretary] . . . and delegated [to the Administrator of the Maritime Administration].

(Emphasis added)  Subsection (s)(2) essentially carried forward the original delegation of authority to the Commandant in 1975, i.e., to carry out all other functions vested in the Secretary by the statute unless reserved or delegated to the Administrator of the Maritime Administration.  The 1975 Delegation did not expressly reserve to the Secretary the authority to designate an additional "adjacent coastal State" under Section 1508(a)(2).

24.    In 1997, the Secretary also delegated some authority to the Maritime Administrator, codified at 49 C.F.R. § 1.66(aa) which states in relevant part:

> (aa)  Carry out the following powers and duties vested in the Secretary by the Deepwater Port Act of 1974, as amended (33 U.S.C. 1501-1524):
>
> (1) The authority to process applications for the issuance, transfer, or amendment of a license for the construction and operation of a deepwater port (33 U.S.C. 1503(bb)) (sic) in coordination with the Commandant of the Coast Guard.
>
> (2)  Approval of fees charged by adjacent coastal States for use of a deepwater port and directly related land-based facilities (33 U.S.C. 1504(h)(2)). . . . .

With respect to "adjacent coastal States," the only authority delegated to the Maritime Administration was the power to approve the fees charged by those States for use of the facility under 33 U.S.C. § 1504(h).  The Delegation did not purport to vest the Maritime Administration with authority to grant a petition under Section 1508(a)(2) for designation as an additional "adjacent coastal State."

25.    On November 25, 2002, Congress amended the DWPA to include deepwater ports for the handling of LNG.  Pub. L. No. 107-295, 116 Stat. 2064, 2086, § 106, amending 33 U.S.C. §§ 1503(9), (13).  The Coast Guard has since received a significant number of applications to build deepwater LNG terminals.

26. On November 25, 2002, Congress also adopted the Homeland Security Act, which transferred the Coast Guard to the Department of Homeland Security. Section 888(b) of that law, Pub. L. No. 107-296, 116 Stat. 2135, 2249, provides:

> There are transferred to the Department [of Homeland Security] the authorities, functions, personnel, and assets of the Coast Guard . . . including the authorities and functions of the Secretary of Transportation relating thereto.

This provision of the Homeland Security Act thereby codified the prior delegations of authority made to the Commandant of the Coast Guard under the DWPA, and transferred these authorities to the Secretary of Homeland Security. Further, Section 888(c) of that law provides that the authorities vested in the Commandant at the time of transfer cannot be redelegated or removed without further action by Congress.

> Notwithstanding any other provision of this Act, the authorities, functions, and capabilities of the Coast Guard to permit its missions shall be maintained intact and without significant reduction after the transfer of the Coast Guard to the Department [of Homeland Security], except as specified in subsequent Acts.

27. In June 2003, the Secretary of Transportation delegated to the Maritime Administration the previously reserved authority to issue, transfer, amend, or reinstate a license for the construction and operation of deepwater ports. Organization and Delegation of Powers and Duties, Update of Secretarial Delegations, 68 Fed. Reg. 36,496 (June 18, 2003). In granting this additional authority to the Maritime Administration, the Secretary of Transportation did not purport to revise or limit the prior delegations of authority to the Coast Guard under the DWPA. The 2003 Delegation specifically stated:

> The USCG retained the statutory and delegated authorities upon its transfer to the Department of Homeland Security . . . Pub. L. No. 107-296, section 888. This rule does not change the authorities delegated to the USCG and to MARAD nor does it change the coordination between the USCG and MARAD for processing license applications.

68 Fed. Reg. at 36,496.

**The Coast Guard Rule Governing Designation of an Additional "Adjacent Coastal State."**

28.     On January 6, 2004, the Coast Guard promulgated 33 C.F.R. § 148.217 (2004), the original version of its regulation concerning designation of additional "adjacent coastal States." Deepwater Ports, 69 Fed. Reg. 724 (Jan. 6, 2004). The rule provided that a petition for designation must be submitted to the Commandant and that the Commandant would send a copy of the request to NOAA asking for recommendations so that a decision could be made within the 45 day statutory deadline. 33 C.F.R. §§ 148.217(b)-(c). Section 148.217(d) further provided:

> If after receiving NOAA's recommendations, the Commandant (G-M) determines that the State should be considered as an adjacent coastal State, the Commandant (G-M) designates it as an adjacent coastal State. If the Commandant (G-M) denies the request, the Commandant notifies the Governor of the requesting State of the denial.

33 C.F.R. § 148.217(d) (2004) (emphasis added). Section 148.217(d) thus explicitly provided that the decision whether to grant a petition for designation as an additional "adjacent coastal State" was to be made by the Commandant of the Coast Guard. The rule provided no role for the Maritime Administration in making that designation.

29.     In September 2006, the Commandant of the Coast Guard issued a final rule amending 33 C.F.R. § 148.217 in one respect, concerning consideration of a State's petition for designation as an additional "adjacent coastal State." Deepwater Ports, 71 Fed. Reg. 57,643 (Sept. 29, 2006). As revised, Section 148.217(d) now provides:

> If after receiving NOAA's recommendations the Commandant (G-P), in concurrence with MARAD Administrator, determines that the State should be considered an adjacent coastal State, the Commandant (G-P), in concurrence with the MARAD Administrator, will so designate it. If the Commandant (G-P), in concurrence with the MARAD Administrator, denies the request, he or she will notify the requesting State's Governor of the denial.

33 C.F.R. § 148.217(d) (2006) (emphasis added).

30.    Section 148.217(d) , as amended, thus currently provides that the decision whether to grant a State's petition for designation as an additional "adjacent coastal State" will be made by the Commandant, not by the Maritime Administrator.  In issuing this rule, the Commandant chose to limit his discretion by providing that he would make this determination "in concurrence with the MARAD Administrator."

**ASIG's Application To Construct the Safe Harbor Energy LNG Deepwater Port.**

31.    On May 8, 2007, ASIG submitted to the Coast Guard and the Maritime Administration an application for all federal authorizations required for a license to construct and operate the Safe Harbor Energy LNG Deepwater Port.  The proposed port would be constructed in federal waters approximately 13.5 miles off the coast of New York and 19 miles off the coast of New Jersey.

32.    The demand for natural gas in the United States is growing rapidly. Department of Energy projections indicate that total domestic consumption of natural gas will increase from 22.4 trillion cubic feet in 2004 to 27.0 trillion cubic feet in 2025.  The Department projects that the Middle Atlantic region, which includes New York and New Jersey, will experience an annual average increase in natural gas consumption of 0.7 percent per year during this time period.  At a national level, the Department predicts that even with increased domestic production, substantial additional imports of natural gas will be required to satisfy domestic demand over the next 25 years.  Deepwater LNG ports are expected to play a crucial role in handling such imports.

33.    The Safe Harbor Energy port is designed to receive LNG, regasify it, and transmit through the existing distribution infrastructure up to two billion cubic feet per

day of natural gas to help satisfy demand in the New York metropolitan area. Natural gas is a clean burning fuel that is considered environmentally superior to other fossil fuel energy sources, such as coal or fuel oil. The offshore location of the proposed port will minimize adverse impacts on water and air quality, enable delivery of LNG without increasing vessel traffic through New York harbor, minimize visual impacts, and minimize safety and security issues presented by onshore LNG terminals.

34.    After several years of study and consultations with federal agencies and the State of New York, ASIG submitted an Application of approximately 5,000 pages in length for authorization to construct the Safe Harbor Energy port off the coast of New York State. On August 15, 2007, the Coast Guard and the Maritime Administration notified ASIG that its application was deemed complete.

35.    On August 22, 2007, Adam Zellner, the Deputy Commissioner of the New Jersey Department of Environmental Protection, sent an e-mail to a consultant working for ASIG on the Safe Harbor Energy project which stated that New Jersey did not have a concern with the proposed port. The e-mail provided:

> Thanks Julie - per our conversation and meeting, the NJ DEP has reviewed the proposal and based on its current configuration, the Department has no regulatory issues that Atlantic Sea Isle Group must deal with. Given the distance off NJ's coast and the fact that the current proposal has all of the infrastructure going coast (*sic*)through NYC, New Jersey has no jurisdiction in this matter. We look forward to working with you and if anything changes that does bring the project into NJ waters, we would be happy to sit down and discuss any issues that may present. Thanks again. Adam Zellner, Deputy Commissioner. NJDEP

(Emphasis added)

36.    On August 27, 2007, the Maritime Administration published in the Federal Register a Notice that the ASIG license application had been submitted and was determined to be complete. Atlantic Sea Island Group LLC, Safe Harbor Energy

Liquefied Natural Gas Deepwater Port License Application, 72 Fed. Reg. 49,041 (Aug. 27, 2007). Publication of this Notice triggered the 330 day statutory timetable for making a final determination on the application.

37. The Safe Harbor Energy port will connect to the existing natural gas pipeline infrastructure at a point in the coastal waters of New York. The Federal Register Notice designated New York as an "adjacent coastal State" for this application under Section 1508(a)(1). *Id*.

38. Section 1508(a)(2) provides that a State must petition for designation as an additional "adjacent coastal State" within 14 days after publication of the Federal Register Notice and that the petition must be resolved "not later than the 45th day after the date [the Secretary] receives such a request from a State." On September 6, 2007, within 14 days after publication of the Notice, the Governor of New Jersey submitted a letter to the Commandant of the Coast Guard and the Administrator of the Maritime Administration requesting that New Jersey be designated as an additional "adjacent coast State" for the Safe Harbor Energy project. Under Section 1508(a)(2), the deadline for resolution of New Jersey's petition expired no later than 45 days after the request was received. 33 C.F.R. § 148.217(c).

39. The letter submitted by the Governor of New Jersey was slightly in excess of two pages in length. The letter contained no facts, documentation or analyses, as required by the Coast Guard rule, but argued in four paragraphs that the potential risk of the project to specific aspects of the New Jersey coastal environment could be equal to or greater than the comparable risks to the New York coastal environment. The Governor's letter also did not attempt to quantify the potential overall risk of the project to the coastal

environments of New York and New Jersey, or to show that the potential overall risk to the "coastal environment" of New Jersey was equal to or greater than the overall risk to the "coastal environment" of New York.

40.     On September 28, 2007, the Administrator of the Maritime Administration sent an interim response to the Governor which acknowledged receipt of New Jersey's request for designation as an additional "adjacent coastal State."  The letter stated that the Maritime Administration would review New Jersey's request under the legal standard established by Section 1508(a)(2) -- that after considering the recommendation of the Administrator of NOAA, the "Maritime Administrator must grant Adjacent Coastal State status if the risk of damage to the requesting State's coastal environment is <u>equal to or greater than</u> the risk posed to a State that would be directly connected by pipeline to the proposed deepwater port."  (Emphasis added).

41.     On October 17, 2007, NOAA submitted a letter to the Maritime Administration in response to its notification that New Jersey had submitted a request for designation as an "adjacent coastal State."  On information and belief, the letter submitted by NOAA was one and one-quarter pages long.  On information and belief, the NOAA letter contained no meaningful analysis of the potential risks that the Safe Harbor Energy project presented to the "coastal environments" of either New York or New Jersey, and did not present a comparative analysis of whether the risks the project presented to the "coastal environment" of New Jersey would be "equal to or greater than" the risks it presented to the "coastal environment" of New York.  This letter stands in stark contrast to the 233 page factual analysis that NOAA submitted in 1975 on the designation of an additional "adjacent coastal State" for the Seadock project.

**Final Action by the Administrator Purporting To Designate New Jersey as an Additional "Adjacent Coastal State" for the Safe Harbor Energy Project.**

42.    On November 2, 2007, almost two weeks after expiration of the statutory deadline, the Administrator sent a letter to the Governor of New Jersey which stated that he had "determined that New Jersey is an Adjacent Coastal State as defined under the Act and is so designated for the proposed Safe Harbor deepwater port project."  The letter stated that the Administrator had based his decision:

> upon consideration of the NOAA recommendation, as well as the magnitude and scope of the proposed project and its potential for significant environmental impact to the State of New Jersey.

43.    The Administrator further noted that "[p]ursuant to the requirements set forth at Section 1508(b) of the Act, the Administrator shall not issue a license without the approval of the Governor of an Adjacent Coastal State" and reiterated that "[a]s Governor of an Adjacent Coastal State, you are afforded the authority in accordance with the requirements of the Act to approve, disapprove, or approve with conditions the deepwater port license application for the Safe Harbor project."

44.    The Administrator's purported action to designate New Jersey an "adjacent coastal State" for the Safe Harbor Energy project violated the DWPA and was arbitrary, capricious, or contrary to law in several respects.

a.  The Administrator did not have statutory authority to make such a designation. The authority to designate a petitioning State as an additional "adjacent coastal State" was delegated by the Secretary of Transportation to the Commandant of the Coast Guard in 1997.  This authority was transferred with the Coast Guard to the Department of Homeland Security in 2002 and may not be redelegated or removed from the Coast Guard except by Act of Congress.  Under the governing regulation, 33 C.F.R.

§ 148.217(d) (2006), the authority to designate an additional "adjacent coastal State" is exercised by the Commandant of the Coast Guard. In 2006, the Commandant chose to limit his discretion by providing that he will exercise the authority to designate an additional "adjacent coastal State" in concurrence with the Maritime Administrator. But under the express language of Section 148.217(d), as amended in 2006, the Commandant shall make any designation of an "adjacent coastal State.". The Administrator acted unilaterally in purporting to designate New Jersey as an additional "adjacent coastal State." The Commandant of the Coast Guard did not sign the purported designation.2006 amendment did not strip the Commandant of his authority to make such designations. Accordingly, the Administrator's decision of November 2, 2007 is without legal authority and contrary to law.

b. Even assuming that the Administrator was the official authorized to make such a designation, his decision was issued after the expiration of the 45 day statutory deadline for designation of a State as an additional "adjacent coastal State" for this project.

c. As stated in the November 2, 2007 letter, the Administrator based his decision:

upon consideration of the NOAA recommendation, as well as the magnitude
and scope of the proposed project and its potential for significant environmental
impact to the State of New Jersey.

In basing his decision on these grounds, the Administrator failed to apply the legal standard that Congress had enacted in Section 1508(a)(2). That provision explicitly states that in order for an additional State to be designated as an "adjacent coastal State," the agency record must show "a risk of damage to the coastal environment of such [petitioning] State equal to or greater than the risk posed to a State directly connected by pipeline to the proposed deepwater port . . . ." (Emphasis added). The Administrator,

however, applied a different criterion not authorized by the statute, which was based on the size of the proposed project – its "magnitude and scope" – and its potential for "significant" environmental impact on New Jersey.

In making this determination, the Administrator did not refer to the potential risk that the Safe Harbor Energy project presented to the "coastal environment" of the State of New York. Further, the Administrator did not perform the analysis or base his decision on the sole standard established by Section 1508(a)(2), whether the risks presented to the "coastal environment" of New Jersey would be "equal to or greater than" the risk posed to the "coastal environment" of New York.

d. In rendering his decision, the Administrator's November 2, 2007 letter did not discuss any evidence in the administrative record that would support a conclusion that the potential risk to the "coastal environment" of New Jersey would be "equal to or greater than" the risk posed to the "coastal environment" of New York, as required by Section 1508(a)(2). The record contains no factual basis on which the Administrator could have based such a decision. Neither the short letter submitted by the Governor of New Jersey nor the one and one-quarter page letter submitted by NOAA contained any facts or analysis upon which a rational decisionmaker could have concluded that the risk presented by this project to the "coastal environment" of New Jersey will be "equal to or greater than" the risk presented to the "coastal environment" of New York.

**The Administrator's Denial of ASIG's Request for Reconsideration of his Decision.**

45.    On December 3, 2007, ASIG submitted to the Secretary of Transportation and the Administrator a request for reconsideration of the Administrator's November 2, 2007 decision designating New Jersey as an "adjacent coastal State." That request

discussed in detail, as set forth above, each of the four grounds on which the Administrator's action violated Section 1508(a)(2) and was arbitrary and capricious for lack of evidentiary support in the administrative record.

46. Employees of the Maritime Administration and the Coast Guard orally informed counsel for ASIG that they had "stopped the clock" on further processing of the Safe Harbor Energy application, for purposes of the statutory deadlines established by the DWPA, until resolution of ASIG's challenge to the legality of the Administrator's action.

47. On February 8, 2008, the Administrator denied ASIG's request for reconsideration of his November 2, 2007 decision. The Administrator responded on the merits to all four of ASIG's arguments why his determination was arbitrary, capricious, or contrary to law. In particular, the Administrator's explanation of the timing of his decision on the petition showed that he had either violated the statutory deadline or had considered a request that was time-barred, but in either event was illegal. The Administrator also conceded that he had presented no factual basis in support of his decision and denied that he was under a legal obligation to present a rationale. Finally, to cure this error the Administrator attempted but failed to articulate an after-the-fact rationale basis for his prior decision.

48. The Administrator's designation of New Jersey as an additional "adjacent coastal State" constitutes "final agency action" for which ASIG may obtain judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 702, 704. This decision represents the culmination of the agency's decisionmaking process on New Jersey's petition. Further, this decision determines the rights or obligations of ASIG and New Jersey, and legal consequences will flow from it. The Administrator's decision means

that the Governor of New Jersey has the authority "to approve, disapprove, or approve with conditions the deepwater port license application for the Safe Harbor project."

49.    The Administrator's illegal and arbitrary decision has caused and is causing ASIG significant economic harm.  ASIG will be irreparably harmed if the environmental and safety review processes that the federal agencies will perform on its Application are conducted under the overhanging cloud of New Jersey's unlawful power to veto the project or impose mandatory conditions that must be included in the federal license.  By granting New Jersey this unlawful power, the Administrator has irreparably injured ASIG's ability and statutory right to obtain a decision within the time deadlines and under the substantive standards adopted by Congress in the DWPA.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (VIOLATION OF THE DEEPWATER PORT ACT AND THE APA)

50.    Plaintiff repeats and incorporates all previous allegations of this Complaint.

51.    The Administrator violated the Deepwater Port Act and the Administrative Procedure Act in designating New Jersey as an additional "adjacent coastal State" under 33 U.S.C. §1508(a)(2), because he did not have the legal authority to make this designation.  Under the existing delegations of authority and regulations implementing the Deepwater Port Act, that authority to designate an "adjacent coastal State" is vested in the Commandant of the Coast Guard.  The Administrator's November 2, 2007 decision usurped authority that has been delegated to the Commandant of the Coast Guard.

## SECOND CLAIM FOR RELIEF
### (VIOLATION OF THE DEEPWATER PORT ACT AND THE APA)

52.    Plaintiff repeats and incorporates all previous allegations of this Complaint.

53.    The Administrator violated the Deepwater Port Act by designating New Jersey as an additional "adjacent coastal State" on November 2, 2007, more than 45 days after the Maritime Administration received the September 6, 2007 petition from the Governor of New Jersey requesting such designation and more than 45 days after document was placed in the docket of this matter on September 10, 2007.    The Administrator's action violated the mandatory deadlines established by the statute and thus was null and void, and without legal effect.

## THIRD CLAIM FOR RELIEF
### (VIOLATION OF THE DEEPWATER PORT ACT AND THE APA)

54.    Plaintiff repeats and incorporates all previous allegations of this Complaint.

55.    The November 2, 2007 decision of the Administrator of the Maritime Administration purporting to designate New Jersey as an additional "adjacent coastal State" was arbitrary, capricious, and violated the Deepwater Port Act and the Administrative Procedure Act, by failing to apply the legal standard established by Congress in Section 1508(a)(2).  That standard permits designation of an additional State as an "adjacent coastal State" only upon a finding that the risk of damage posed by the Safe Harbor Energy project to the "coastal environment" of New Jersey would be "equal to or greater than the risk posed to" the "coastal environment" of New York.  The Administrator never made the finding required by the statute.  Instead, the Administrator

based his decision on a different and less stringent standard that Congress never authorized and that conflicts with the terms of the standard that Congress actually adopted in Section 1508(a)(2).

## FOURTH CLAIM FOR RELIEF
### (VIOLATION OF THE DEEPWATER PORT ACT AND THE APA)

56.     Plaintiff repeats and incorporates all previous allegations of this Complaint.

57.     The Administrator's November 2, 2007 decision designating New Jersey as an additional "adjacent coastal State" under Section 1508(a)(2) was arbitrary, capricious, and violated the Deepwater Port Act and the Administrative Procedure Act, because the agency record did not contain factual evidence that supported the conclusion required for designation of New Jersey as an additional "adjacent coastal State," namely that the risk of harm presented by the Safe Harbor Energy project to the "coastal environment" of New Jersey was "equal to or greater than" the risk it posed to the "coastal environment" of New York.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Atlantic Sea Island Group requests the following relief:

1.     For a declaration that the Administrator of the Maritime Administration, acting on behalf of the Secretary of Transportation, violated 33 U.S.C. § 1508(a)(2) and 33 C.F.R. §148.217(d), and acted arbitrarily and capriciously, in designating the State of New Jersey as an additional "adjacent coastal State" for purposes of the Safe Harbor Energy LNG Deepwater Port application.

2.    For an Order permanently enjoining the Administrator of the Maritime Administrator and the Secretary of Transportation from designating or treating the State of New Jersey as an additional "adjacent coastal State" with respect to the Safe Harbor Energy LNG Deepwater Port project.

3.    For an Order directing defendants to "restart the clock" for purposes of the statutory deadlines established by the DWPA for consideration of plaintiff's Application for a federal license to construct and operate the Safe Harbor Energy port.

4.    For an Order awarding plaintiffs such other and further relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

_____
JOHN F. COONEY
(D.C. Bar No. 936336)
JAMES H. BURNLEY IV
(D.C. Bar No. 426299)
DAVID G. DICKMAN
(D.C. Bar No. 465010)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4812

February 15, 2008                              Counsel for Plaintiff

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ATLANTIC SEA ISLAND GROUP LLC | SEAN T. CONNAUGHTON<br>MARY E. PETERS |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  New York<br>(EXCEPT IN U.S. PLAINTIFF CASES)  New York | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY) ———————<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Venable LLP<br>575 - 7th Street, N.W.<br>Washington, D.C.  20004<br>(202) 344-4000 | ATTORNEYS (IF KNOWN)<br>U.S. Department of Justice |
|---|---|

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

✸ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A.  Antitrust**

☐ 410 Antitrust

**○ B.  Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**✸ C.  Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

890 - Other Statutory Action

---

**○ E.  General Civil (Other)**          **OR**          **○ F.  Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. 702; 33 U.S.C. 1508 Illegal Designation of Adjacent Coastal State under Deepwater Act

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ [_____]   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE *Feb. 15, 2008*   SIGNATURE OF ATTORNEY OF RECORD   *John F. Cooney*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C.; and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.