## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ATLANTIC SEA ISLAND GROUP LLC,** ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No.** |
| ) | **08-00259 (RWR)** |
| **SEAN T. CONNAUGHTON** ) | |
| **Administrator** ) | |
| **Maritime Administration,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MARY E. PETERS,** ) | |
| **Secretary** ) | |
| **Department of Transportation,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO SUPPLEMENT THE RECORD

Plaintiff Atlantic Sea Island Group ("ASIG") moves for entry of an Order to require Defendants to supplement the Record on which the pending Motion for a Preliminary Injunction will be decided.

The Record currently before the Court lacks a critical document -- a letter dated October 17, 2007 from the National Oceanic and Atmospheric Administration ("NOAA") to the Maritime Administration concerning New Jersey's petition for designation as an additional "adjacent coastal State." This letter is one of two documents that the Administrator was required by statute to consider in determining New Jersey's petition for designation; one that he did in fact consider; and upon which he explicitly relied in his November 2, 2007 decision conferring "adjacent coastal State" status on New Jersey.

On March 11, 2008, New Jersey filed a Motion to Intervene in this litigation. Attached to that submission was a letter from the State to the Maritime Administration dated November 1,

2007.  The New Jersey letter quoted from the missing NOAA letter and noted that NOAA criticized as inadequate the State's original submission in support of its petition for designation. The November 1, 2007 New Jersey letter also described a conference call that the Maritime Administration conducted with the State on October 24, 2007, to discuss the NOAA criticism and the inadequacies of the State's submission.  The NOAA letter identified several deficiencies in the State's submission, and the November 1st letter was the product of that conference call and an attempt to resolve those deficiencies.

It therefore is evident that the October 17, 2007 NOAA letter will play a vital role in the resolution of the case.  The full text of that letter should be before the Court in considering the probability of success on the merits aspect of the Motion for a Preliminary Injunction, so that the Court does not have to rely upon the partial description set for the in New Jersey's November 1st letter.  The Maritime Administration, however, has refused to release that document to ASIG or to submit it to the Court, despite several previous requests.  New Jersey's own submission shows that the Maritime Administration shared the contents of the NOAA letter with the State in October 2007, in order to permit it to try to bolster its showing on the "adjacent coastal State" issue.  The Maritime Administration thereby vitiated any possible basis for withholding that document from the Court and ASIG.

Accordingly, the Court should order the Maritime Administrator to supplement the Record by submitting to the Court and ASIG immediately the October 17, 2007 NOAA letter and any related communications with NOAA regarding its recommendations on the Safe Harbor Energy project, for the Court's use in considering the pending Motion.  The Court also should require the Administrator to submit all documents in its possession concerning its communications with New Jersey concerning the NOAA letter, in particular documents relevant

to the October 24, 2007 conference call with New Jersey about the contents of the October 17th NOAA letter.

## Background

Under the Deepwater Port Act ("DWPA"), there are two documents that the Administrator is required to consider in determining whether to designate an additional State as an "adjacent coastal State" – the State's petition for designation, and an analysis of the request by NOAA.  33 U.S.C. § 1508(a)(2).

On September 6, 2007, New Jersey petitioned the Maritime Administration and the United States Coast Guard to be designated an "adjacent coastal State" under Section 1508 of the DWPA for purposes of the Safe Harbor Energy project.  Pursuant to Section 1508(a)(2), the New Jersey petition was submitted to the Administrator of NOAA for his recommendations.  On October 17, 2007, NOAA sent a letter to the Maritime Administration discussing New Jersey's petition.  In his November 2, 2007 decision designating New Jersey as an "adjacent coastal State," the Administrator explicitly based his decision, in part, "upon consideration of the NOAA recommendation" dated October 17, 2007.  Attachment 1.

The Maritime Administration has declined ASIG's request for release of this letter under Exemption 5 of the Freedom of Information Act, 5 U.S.C. § 552(b)(5), on the ground that it was a pre-decisional memorandum exempt from production under Exemption 5 of FOIA. Attachment 2.  It also caused NOAA to deny ASIG's FOIA request for the October 17, 2007 letter on the same Exemption 5 rationale.  Attachment 3.

In its Opposition to Defendants' Second Motion for an Extension of Time to Respond to Plaintiff's Motion for a Preliminary Injunction and Request for a Production of a Statutorily-Required Document, ASIG noted that the Maritime Administration had denied its request for

access to the NOAA letter and had stated through litigation counsel that it would not submit the NOAA letter in support of its Opposition to the Motion for a Preliminary Injunction. [Document # 8, filed March 10, 2008]. In fact, Defendants did not submit this document as part of their Opposition. [Document # 11, filed March 17, 2008]. Indeed, in its Reply in support of its Second Request for an Extension of Time and in Opposition to ASIG's request that the NOAA letter be produced to the Court, the government argued that "it is purely speculative for Plaintiff to state that such a document 'will play' a significant role in consideration of the probability of success on the merits given that the document has not been released consistent with provisions of the FOIA." [Document # 9 at 2, filed March 10, 2008]. Defendants never responded to ASIG's argument that the document must be produced because the Administrator was required by statute to consider it and that it expressly formed part of the basis for his decision.

New Jersey's Motion to Intervene has now clearly established that the Maritime Administration has not been even-handed in its treatment of the critical NOAA letter, but has selectively provided its contents to the State while denying them to ASIG and the Court. In a letter to the Maritime Administration dated November 1, 2007, Ms. Ruth Ehinger, Coastal Program Manager for the State of New Jersey, quoted from the NOAA letter; referred to specific issues discussed in that letter, which reflected negatively on the State's petition; and disclosed that the Maritime Administration and the State had discussed the issues presented by the NOAA letter.

> This letter serves to address issues raised by NOAA in its October 17, 2007 letter to the Maritime Administration, as you requested in our conference call on October 24, 2007. NOAA's letter addresses Cholera Bank and fishing, the coastal environment and water quality.
>
> The NOAA letter indicates that New Jersey should provide additional information that the risk to New Jersey is equal to or greater than the risk posed to ". . . New

York, the State that is directly connected by pipeline to the proposed deepwater port."[1]

Attachment 4. The State's letter was submitted to the Maritime Administration on November 1, 2007, and the Administrator issued his decision on November 2, 2007. In his decision, the Administrator did not refer to the State's November 1st letter.

## Argument

### Defendants Should Be Required To Supplement the Record To Include the Statutorily-Required NOAA Letter on Which the Administrator Relied.

A court reviewing an agency action must base its decision on "the whole record" that was actually before the agency, as opposed to a selective record compiled by agency lawyers for the purpose of defending the final result. *See, Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971). In fact, "the 'whole record,' if it is incomplete, must be viewed as a 'fictional account of the actual decision-making process.'" *See, Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (*quoting Home Box Office, Inc. v. Federal Communications Comm'n*, 567 F.2d 9, 54 (D.C.Cir.1977)).

It is well established that a court may grant a motion to supplement the Record to require an administrative agency to submit information already in its possession that was part of its decisionmaking process but that was initially omitted from the record. *See, Pacific Shores Subdivision v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 5-6 (D.D.C. 2006). The grant of a motion to supplement the Record is appropriate when, among other things, "the agency considered evidence which it failed to include in the record . . . ." *Esch v. Yeuter*, 876 F. 2d 976, 991 (D.C. Cir. 1987). For example, in *Environmental Defense Fund v. Blum*, 458 F. Supp. 650 (D.D.C. 1978), the court held that "[t]he agency may not . . . skew the 'record' for review in its

---

[1] Attachment 4 to the Motion of Jon S. Corzine, Governor of the State of New Jersey, and State of New Jersey to Intervene Pursuant to Federal Rule of Civil Procedure 24(a)(2) at 1.

favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question . . . ." *Id.* at 661.

Here, the Administrator has attempted to shape the record to suit his purposes by declining to produce to ASIG or to submit to the Court the October 17, 2007 NOAA letter that he was required to consider under Section 1508(a)(2); that he did in fact consider in designating New Jersey as an additional "adjacent coastal State"; and that he explicitly cited in his decision as one of the bases for his determination.

The public record now contains a partial description of the contents of the missing NOAA letter – not through any action of the Administrator, but through New Jersey's submission of its November 1st letter. The State's letter quoted part of the October 17th NOAA letter and described several aspects in which NOAA had informed the Maritime Administration that the State's submission was inadequate.

Through the New Jersey filing, the public record also now shows that the Maritime Administrator has been disingenuous and discriminatory in his treatment of the NOAA letter, supplying it to the State but not the Court and ASIG, and thereby "skew[ing] the 'record' for review in its favor by excluding" negative information that he had before him and that he was obliged to consider in resolving the petition, namely the criticisms of New Jersey's submission that NOAA set forth in its letter. *Environmental Defense Fund*, 458 F. Supp. at 661.

The Administrator denied production of the NOAA letter to ASIG under the FOIA Exemption for pre-decisional memoranda, at a time when the agency previously had disclosed the contents of the letter to New Jersey and had held a conference call with the State that addressed how the State should attempt to overcome the deficiencies that NOAA had identified

with its petition.  The Maritime Administration also blocked disclosure of the letter by NOAA, in response to ASIG's FOIA request, on the same pre-decisional memoranda grounds.

In this Court, the Maritime Administration objected to production of the NOAA letter on the ground that "it is purely speculative for Plaintiff to state that such a document 'will play' a significant role in consideration of the probability of success on the merits . . . ," although the agency knew that the letter had criticized the New Jersey petition in several respects and also knew that it had discussed the NOAA criticisms with the State prior to its decision, to provide the State an opportunity to cure those deficiencies.  The agency's effort to prevent public disclosure and judicial review of the NOAA letter has now been revealed, by the fortuitous occurrence that New Jersey happened to attach its November 1, 2007 letter to the Motion to Intervene.

The importance of the NOAA letter to the decision made by the Administrator is also confirmed by the government's Opposition to the Motion for a Preliminary Injunction.  It included as an attachment the decisions of the Secretary of Transportation in the only other two instances in which a state has petitioned under the Deepwater Port Act to be designated an additional "adjacent coastal State."  Def. Ex. 13.  In his decision on a request by the State of Mississippi for designation, the Secretary described the record for his determination, which included "[t]he recommendations of NOAA set forth in a letter to me from Robert M. White, Administrator, dated March 24, 1976."  The Secretary stated that "[m]y primary source of advice is NOAA, as mandated by the Act."  Def. Ex. 13 at 2.  Similarly, in his decision regarding a petition by the State of Florida, the Secretary again listed the letter from NOAA as part of the record on which he based his decision and repeated that NOAA was the agency's primary source of advice, as mandated by the DWPA.  In making his decision, he discussed NOAA's findings

and recommendations in significant detail. *Id*. at 6. These precedents clearly rebut the government's characterization as "speculative" ASIG's statement that the NOAA letter will play a significant role in the consideration of this case.

On the contrary, for the reasons set forth above, it is clear that the NOAA letter has an important role to play in the Court's consideration of the probability of success on the merits branch of the preliminary injunction inquiry. The Administrator's failure to submit this document to the Court for review threatens to deprive the Court of the ability to review a document that the Administrator was required by statute to consider and on which he expressly relied.

Accordingly, the Court should direct the Administrator to submit to the Court immediately a copy of the October 17, 2007 NOAA letter, so that the Court will have a full Record before it; and not the skewed Record that the agency has attempted to create by denying access to this document that, according to the limited information available from the State's quotation from the letter, identifies deficiencies in New Jersey's petition. Disclosure also would assure that ASIG and New Jersey are treated fairly. New Jersey has had access to the contents of the letter for many months, while the agency has systematically blocked all ASIG's efforts to obtain access to the letter.

To make certain that it has before it full information concerning the agency's handling of the NOAA "recommendations," the Court also should order the Maritime Administration to supplement the Record by producing copies of any letters, memoranda, notes or e-mail communications it had with NOAA concerning the Safe Harbor Energy project. The Court also should order the agency to produce copies of any letters, memoranda, notes or e-mail communications relating to its contacts with New Jersey regarding the NOAA recommendations,

including in particular documents relevant to the contents of the October 24, 2007 conference call with New Jersey concerning the October 17, 2007 NOAA letter.

## **Conclusion**

For the reasons set forth above, Plaintiff's Motion to Compel Defendants to Supplement the Record should be granted.

Respectfully submitted,


_____/s/ John F. Cooney_____
JOHN F. COONEY
(D.C. Bar No. 936336)
JAMES H. BURNLEY IV
(D.C. Bar No. 426299)
DAVID G. DICKMAN
(D.C. Bar No. 465010)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4812

March 21, 2008                         Counsel for Plaintiff

U.S. Department
of Transportation
**Maritime
Administration**

Administrator

1200 New Jersey Avenue, S.E.
Washington, DC 20590

**NOV 2 2007**

The Honorable Jon S. Corzine
Governor of New Jersey
Trenton, New Jersey 08624-0001

Re:  New Jersey Adjacent Coastal State Designation

Dear Governor Corzine:

This letter is in response to your request for the designation of New Jersey as an Adjacent
Coastal State for the proposed Safe Harbor Energy deepwater port project (Safe Harbor).
As indicated in my letter of September 28, 2007, the Maritime Administrator, by
delegated authority, and in accordance with Section 1508(a)(2) of the Deepwater Port Act
of 1974 (the Act), shall make such a designation only after receiving the recommendation
of the Administrator of the National Oceanic and Atmospheric Administration (NOAA).
On October 17, 2007, my office received the NOAA recommendation.

Accordingly, upon consideration of the NOAA recommendation, as well as the
magnitude and scope of the proposed project and its potential for significant
environmental impact to the State of New Jersey, I have determined that New Jersey is an
Adjacent Coastal State as defined under the Act and is so designated for the proposed
Safe Harbor deepwater port project.  This determination has been made consistent with
the particular set of facts and circumstances underlying the request.  Pursuant to the
requirements set forth at Section 1508(b) of the Act, the Administrator shall not issue a
license without the approval of the Governor of an Adjacent Coastal State.  Therefore, we
look forward to forging a strong working relationship with your office to successfully
address your concerns and requirements of Safe Harbor in securing a safe and effective
means of importing natural gas into the United States.

As the Governor of an Adjacent Coastal State, you are afforded the authority in
accordance with the requirements of the Act to approve, disapprove, or approve with
conditions the deepwater port license application for the Safe Harbor project.  Such
license conditions may include, but are not limited to:  1) requiring environmental
monitoring and mitigation measures; 2) the collection of fees to offset any economic,
environmental, and administrative costs that may be incurred by your state associated
with the construction and operation of the proposed deepwater port; and 3) other
conditions to ensure that the proposed port will conform with New Jersey's
environmental programs.

To this end, we would like to arrange a meeting in the near future with you and your immediate staff to further discuss your concerns regarding the proposed Safe Harbor project. Please contact Mr. Keith Lesnick, Director, Office of Deepwater Ports and Offshore Activities at 202-366-1624 or Keith.Lesnick@dot.gov to arrange the most convenient meeting time.

We look forward to working with you and your staff, and I appreciate the time and attention you have given to this important matter.

Sincerely,

Sean T. Connaughton
Maritime Administrator

cc:     The Honorable Eliot Spitzer
        The Honorable Frank R. Lautenberg
        Vice Admiral Conrad C. Lautenbacher, Jr., NOAA
        Admiral Thad W. Allen, USCG



# State of New Jersey
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

ON S. CORZINE
*Governor*

LISA P. JACKSON
*Commissioner*

Coastal Management Office
401 E. State Street, 7th Floor, West
P.O. Box 418
Trenton, New Jersey 08625
Phone: 609-633-2201
Fax: 609-292-4608

November 1, 2007

H. Keith Lesnick, Director
Office of Deepwater Ports and Offshore Activities
Maritime Administration
1200 New Jersey Avenue, S.E. (MAR-530)
Second Floor, West Wing
Washington, D.C. 20590

Dear Mr. Lesnick,

Thank you for discussing the current status of New Jersey's request for adjacent coastal state status under the Deepwater Port Act with reference to the Safe Harbor/Atlantic Sea Island Group application. This letter serves to address issues raised by NOAA in its October 17, 2007 letter to the Maritime Administration, as you requested in our conference call on October 24, 2007. NOAA's letter addresses Cholera Bank and fishing, the coastal environment and water quality.

The NOAA letter indicates that New Jersey should provide additional information demonstrating that the risk to New Jersey is equal to or greater than the risk posed to "...New York, the State that is directly connected by pipeline to the proposed deepwater port." The proposed pipeline will tie into the existing Transco pipeline that runs from Sayreville, New Jersey to Long Beach, New York. Therefore, if New York is directly connected by pipeline to the proposed deepwater port, as NOAA states, then New Jersey is also directly connected by pipeline to the proposed deepwater port, in the identical manner. Furthermore, an alternative pipeline route is included in the deepwater port application. Since a deepwater port includes all pipelines and structures associated with the project, if the alternative pipeline route is used, New Jersey would be within the necessary 15 miles to be an adjacent coastal state based on the alternative route alone.

The deepwater port is proposed on Cholera Bank. Cholera Bank is heavily used by recreational and commercial fishermen. Prime fishing areas are designated a special area and marine fisheries are protected under New Jersey's Coastal Zone Management rules,

which are enforceable policies under New Jersey's federally approved coastal management program. Cholera Bank is, and has historically been, an important productive fishing ground for the New Jersey commercial ground fishing fleet and for recreational fishing. The area was mapped as an important recreational and commercial fishing ground in New Jersey's Recreational and Commercial Ocean Fishing Grounds (1982) and important for recreational fishing in the NOAA Anglers' Guide to the United States Atlantic Coast, Section III, Block Island to Cape May, New Jersey (1974). Recent surveys of recreational party and charter boat captains confirmed the importance to recreational fishing in 2003. The proposed location of the project is specifically known as Anglers Bank and Middle Grounds. Through personal communication this year with the commercial fishing dock managers from Belford, New Jersey (Belford Fishermen's Cooperative) and Point Pleasant, New Jersey (Fishermen's Dock Cooperative), and several New York based companies at Fulton Fish Market, this area remains of economic importance to New Jersey's commercial fishermen, and is of importance to New York's commercial fishermen as well.

Clearly the Cholera Bank fishing ground would be affected by the construction of an island occupying 112 acres of ocean bottom, eliminating that habitat. Fisheries would also be affected as fishing boats would be excluded from the area around the island. Since fishermen from both New York and New Jersey are fishing these fishing grounds, impacts would be comparable. Further, the application indicates that sand and rock to build the island will be obtained from the New York channel deepening. In meetings with New Jersey in 2006, the applicant proposed mining sand from the ocean floor to obtain material to create the island. If logistical problems preclude obtaining all necessary material from the channel deepening, and mining were again proposed, it too would affect the fish habitat.

Coastal environment as defined in the statute includes navigable waters (including lands therein and thereunder). The definition contains a list of resources that are included in the coastal environment, including fish, wildlife, and recreational values of lands, waters and resources. The list is not exhaustive. New Jersey considers its commercial and recreational fisheries to be part of its coastal environment. Fish and wildlife, such as avian species, are highly mobile living resources that are also part of New Jersey's coastal environment. As these living resources do not distinguish between New York and New Jersey, the risk to New Jersey is comparable to that of New York.

Good water quality is critical to these living resources. Water quality will be affected during construction, operation, and maintenance of the proposed deepwater port. Any adverse affect on water quality could affect living resources of the coastal environment. The figure "Dominant Winds, Waves and Currents of the New York Bight," (Figure 2-2 Volume Three, Part One: Deepwater Port License Application) indicates that the prevailing direction of the currents is toward New Jersey and the direction of waves is into the New York/New Jersey Harbor. Accordingly, it is likely that water quality impacts to the coastal environment would be equal for New York and New Jersey.

In 2006, the applicant indicated that a future pipeline from the deepwater port would come ashore in the area of Linden, New Jersey. The application indicates that the capacity of the project is 1.15 billion cubic feet per day of natural gas. The maximum takeaway capacity of the Long Beach Meter Station, Long Beach, New York, is approximately 530 million cubic feet per day. The Milltown Regulator Station, Milltown, New Jersey, has an estimated maximum capacity of 619 million cubic feet per day. Therefore, New Jersey is equally affected by the operation of the deepwater port.

Contrary to the applicant's October 10, 2007 objection letter to the director of NOAA's Office of Ocean and Coastal Resource Management regarding New Jersey's request for federal consistency review, the documentation that New Jersey received does not include information providing the location of the five facilities in the metropolitan New York area that may be used for staging of construction. These locations are discussed in Section 4 of the application, to which New Jersey has not been granted access. The application indicates that staging will be from facilities in the metropolitan New York area, which includes New Jersey waters, ports and waterfront facilities.

It is not a requirement and would be difficult to determine the full nature and magnitude of the extent of the impacts to either New Jersey's or New York's coastal environment prior to completion of an EIS. The standard is whether "there is a risk of damage to the coastal environment of such state equal to or greater than the risk posed to a State directly connected by pipeline to the proposed deepwater port." Based on the above, the damage to the coastal environments would be equal for New York and New Jersey.

Sincerely,

Ruth Ehinger
Coastal Program Manager

c.    Mitch Hudson, MARAD



**UNITED STATES DEPARTMENT OF COMMERCE**
National Oceanic and Atmospheric Administration
NATIONAL OCEAN SERVICE
Silver Spring, Maryland 20910

February 7, 2008

Mr. David G. Dickman
Venable LLP
575 7th Street, N.W.
Washingotn, DC 20004

Re: Freedom of Information Request No. 2008-00074

Dear Mr. Dickman:

This is in response to your Freedom of Information Act (FOIA) request dated November 15, 2007, which seeks a letter from the National Oceanic and Atmospheric Administration (NOAA) to the United States Maritime Administration (MARAD) dated October 17, 2007, concerning the proposed Safe Harbor Energy LNG Deepwater Port Project.

The information you have requested is being withheld in its entirety pursuant to 5 U.S.C. § 552(b)(5), which protects from disclosure "[i]nter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." We note that MARAD reached this same conclusion in response to a FOIA request served upon that Agency requesting production of the same letter

Based on the above information, this constitutes a denial of your request. You may appeal the denial of this FOIA request within 30 days of receipt of this letter. Your appeal must be received within 30 calendar days of the date of the initial denial letter by the Assistant General Counsel for Administration. Please address your appeal to the following office:

Assistant General Counsel for Administration
Room 5898-C
U.S. Department of Commerce
14th and Constitution Avenue, N.W.
Washington, D.C., 20230

Your appeal may also be sent by e-mail to FOIAAppeals@doc.gov or by facsimile (fax) to (202) 482-2552. Your appeal must include: a copy of the original request; the response to your request; and a statement of the reason why the withheld records should be made available, and why the denial of the records was in error. Also, the appeal letter, the envelope, the-email subject line, and the fax cover sheet should be clearly marked **"Freedom of Information Act Appeal."**


Printed on Recycled Paper



The e-mail, fax machine, and Office of General Counsel are monitored only on working days during normal business hours (8:30 a.m. to 5:00 p.m., Eastern time, Monday through Friday). FOIA appeals posted to the e-mail box, fax machine or Office of the General Counsel after normal business hours will be deemed received on the next normal business day.

If you have any questions regarding your request, you may contact me at 301-713-3074.

Sincerely,

John H. Dunnigan
Assistant Administrator for
Ocean Services and Coastal
    Zone Management



Department of Transportation

1200 New Jersey Avenue, SE
Second Floor, West Building
Room W24-233
Washington, D.C. 20590

**Maritime
Administration**
Office of Chief Counsel

Christine S. Gurland, FOIA Officer
202-366-5181
Ann Herchenrider, FOIA Public Liaison
202-366-5165
Jeannette S. Riddick
FOIA Requester Service Center
202-366-2666
FACSIMILE: 202-366-7485
Toll free: 1-800-986-9678 ext. 65181
E-mail address: FOIA.MARAD@dot.gov

February 6, 2008

Jim Burnley, Esq.
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601

Control No.: 08-013

Dear Mr. Burnley:

This letter is in response to your November 19, 2007 Freedom of Information Act (FOIA) request for a copy of the document, dated on or about October 17, 2007, that was prepared and signed by NOAA in response to a request from the U.S. Maritime Administration in accordance with the provisions of the Deepwater Port Act.

The document listed on the enclosed list is being withheld in its entirety pursuant to Exemption (b) (5) of the FOIA. Exemption (b) (5) of the FOIA encompasses "interagency or intra-agency memorandum or letters which would not be available by law to a party...in litigation with the agency." Exemption (b)(5) also incorporates the deliberative process privilege which applies to the nondisclosure of information in order to prevent injury to the quality of agency decisions, as well as the attorney-client privilege which protects from disclosure confidential communications between an attorney and his or her client. Specifically, the withheld material contains privileged information related to the deliberative process.

The withheld document has not been redacted because after redaction of confidential information no reasonably segregable remaining material would have meaning.

Page 2

You may contest the nondisclosure noted above by submitting an appeal, in writing, within 30 days from the date hereof, to the Maritime Administration, 400 Seventh Street, S.W., Washington, D.C.  20590.  The appeal and its envelope should be marked "Freedom of Information Act Appeal

There are no charges incurred in connection with your request.

Sincerely,


CHRISTINE S. GURLAND
Freedom of Information Act Officer

Enclosure

**DOCUMENT WITHHELD IN ITS ENTIRETY
PURSUANT TO EXEMPTION (B) (5) OF THE FOIA**

1.   **October 17, 2007** – Letter to H. Keith Lesnick, Director, Office of Deepwater Ports and Offshore Activities, Maritime Administration, from Conrad C. Lautenbacher, Jr., Department of Commerce. (2 pages)



**State of New Jersey**
DEPARTMENT OF ENVIRONMENTAL PROTECTION

JON S. CORZINE
*Governor*

LISA P. JACKSON
*Commissioner*

Coastal Management Office
401 E. State Street, 7th Floor, West
P.O. Box 418
Trenton, New Jersey 08625
Phone: 609-633-2201
Fax: 609-292-4608

November 1, 2007

H. Keith Lesnick, Director
Office of Deepwater Ports and Offshore Activities
Maritime Administration
1200 New Jersey Avenue, S.E. (MAR-530)
Second Floor, West Wing
Washington, D.C. 20590

Dear Mr. Lesnick,

Thank you for discussing the current status of New Jersey's request for adjacent coastal state status under the Deepwater Port Act with reference to the Safe Harbor/Atlantic Sea Island Group application. This letter serves to address issues raised by NOAA in its October 17, 2007 letter to the Maritime Administration, as you requested in our conference call on October 24, 2007. NOAA's letter addresses Cholera Bank and fishing, the coastal environment and water quality.

The NOAA letter indicates that New Jersey should provide additional information demonstrating that the risk to New Jersey is equal to or greater than the risk posed to "…New York, the State that is directly connected by pipeline to the proposed deepwater port." The proposed pipeline will tie into the existing Transco pipeline that runs from Sayreville, New Jersey to Long Beach, New York. Therefore, if New York is directly connected by pipeline to the proposed deepwater port, as NOAA states, then New Jersey is also directly connected by pipeline to the proposed deepwater port, in the identical manner. Furthermore, an alternative pipeline route is included in the deepwater port application. Since a deepwater port includes all pipelines and structures associated with the project, if the alternative pipeline route is used, New Jersey would be within the necessary 15 miles to be an adjacent coastal state based on the alternative route alone.

The deepwater port is proposed on Cholera Bank. Cholera Bank is heavily used by recreational and commercial fishermen. Prime fishing areas are designated a special area and marine fisheries are protected under New Jersey's Coastal Zone Management rules,

which are enforceable policies under New Jersey's federally approved coastal management program. Cholera Bank is, and has historically been, an important productive fishing ground for the New Jersey commercial ground fishing fleet and for recreational fishing. The area was mapped as an important recreational and commercial fishing ground in <u>New Jersey's Recreational and Commercial Ocean Fishing Grounds</u> (1982) and important for recreational fishing in the NOAA <u>Anglers' Guide to the United States Atlantic Coast, Section III, Block Island to Cape May, New Jersey</u> (1974). Recent surveys of recreational party and charter boat captains confirmed the importance to recreational fishing in 2003. The proposed location of the project is specifically known as Anglers Bank and Middle Grounds. Through personal communication this year with the commercial fishing dock managers from Belford, New Jersey (Belford Fishermen's Cooperative) and Point Pleasant, New Jersey (Fishermen's Dock Cooperative), and several New York based companies at Fulton Fish Market, this area remains of economic importance to New Jersey's commercial fishermen, and is of importance to New York's commercial fishermen as well.

Clearly the Cholera Bank fishing ground would be affected by the construction of an island occupying 112 acres of ocean bottom, eliminating that habitat. Fisheries would also be affected as fishing boats would be excluded from the area around the island. Since fishermen from both New York and New Jersey are fishing these fishing grounds, impacts would be comparable. Further, the application indicates that sand and rock to build the island will be obtained from the New York channel deepening. In meetings with New Jersey in 2006, the applicant proposed mining sand from the ocean floor to obtain material to create the island. If logistical problems preclude obtaining all necessary material from the channel deepening, and mining were again proposed, it too would affect the fish habitat.

Coastal environment as defined in the statute includes navigable waters (including lands therein and thereunder). The definition contains a list of resources that are included in the coastal environment, including fish, wildlife, and recreational values of lands, waters and resources. The list is not exhaustive. New Jersey considers its commercial and recreational fisheries to be part of its coastal environment. Fish and wildlife, such as avian species, are highly mobile living resources that are also part of New Jersey's coastal environment. As these living resources do not distinguish between New York and New Jersey, the risk to New Jersey is comparable to that of New York.

Good water quality is critical to these living resources. Water quality will be affected during construction, operation, and maintenance of the proposed deepwater port. Any adverse affect on water quality could affect living resources of the coastal environment. The figure "Dominant Winds, Waves and Currents of the New York Bight," (Figure 2-2 Volume Three, Part One: Deepwater Port License Application) indicates that the prevailing direction of the currents is toward New Jersey and the direction of waves is into the New York/New Jersey Harbor. Accordingly, it is likely that water quality impacts to the coastal environment would be equal for New York and New Jersey.

In 2006, the applicant indicated that a future pipeline from the deepwater port would come ashore in the area of Linden, New Jersey. The application indicates that the capacity of the project is 1.15 billion cubic feet per day of natural gas. The maximum takeaway capacity of the Long Beach Meter Station, Long Beach, New York, is approximately 530 million cubic feet per day. The Milltown Regulator Station, Milltown, New Jersey, has an estimated maximum capacity of 619 million cubic feet per day. Therefore, New Jersey is equally affected by the operation of the deepwater port.

Contrary to the applicant's October 10, 2007 objection letter to the director of NOAA's Office of Ocean and Coastal Resource Management regarding New Jersey's request for federal consistency review, the documentation that New Jersey received does not include information providing the location of the five facilities in the metropolitan New York area that may be used for staging of construction. These locations are discussed in Section 4 of the application, to which New Jersey has not been granted access. The application indicates that staging will be from facilities in the metropolitan New York area, which includes New Jersey waters, ports and waterfront facilities.

It is not a requirement and would be difficult to determine the full nature and magnitude of the extent of the impacts to either New Jersey's or New York's coastal environment prior to completion of an EIS. The standard is whether "there is a risk of damage to the coastal environment of such state equal to or greater than the risk posed to a State directly connected by pipeline to the proposed deepwater port." Based on the above, the damage to the coastal environments would be equal for New York and New Jersey.

Sincerely,

Ruth Ehinger
Coastal Program Manager

c.    Mitch Hudson, MARAD