UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLANTIC SEA ISLAND GROUP LLC, )<br> )<br>    Plaintiff )<br> )<br>    v. )<br> )<br>SEAN T. CONNAUGHTON, )<br>  Administrator, Maritime Administration, )<br> )<br> and )<br> )<br>MARY E. PETERS, )<br> Secretary, U.S. Department of Transportation, )<br> )<br>    Defendants. )<br>_____) | Civil Action No. 08-00259(RWR) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THE OCTOBER 17, 2007 LETTER FROM THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION**

Plaintiff has moved to file an October 17, 2007 letter from the National Oceanic Atmospheric Administration ("NOAA") as part of the record in this matter for consideration by the Court when deciding Plaintiff's Motion for a Preliminary Injunction. See R. 29, Mem. P.&A. Supp. of Pl.'s Mot . Leave to Submit the Recently Released National Oceanic and Atmospheric Administration Letter ("Motion to Submit Letter"), Ex. 1. Defendants have no objection to inclusion of the letter in the record[1], but herein also respond to other matters raised by Plaintiff in

---

[1] Defendants believed that the letter was covered by the deliberative process privilege, and in response to Plaintiff's Freedom of Information Act request, withheld the document on this basis. See, e.g. Eugene Burger Management Corp. v. U.S. Dept. of Housing and Urban Development, 192 F.R.D. 1, 4-6 (D.D.C. 1999)(stating that the deliberative process privilege allows agency to expurgate certain information from the administrative record); Center for Biological Diversity v. Norton, 326 F.Supp.2d 1149, 1152-54 (D.N.M. 2004)(discussing application of deliberative process privilege in context of an administrative record); Maine v. Norton, 208 F.Supp.2d 63, 66-67 (D.Me. 2002)("Courts have consistently held that an agency
(continued...)

its Motion to Submit Letter. In the letter, NOAA recommends that the Maritime Administration (also referred to as "MARAD") solicit from New Jersey additional information supporting the state's request for designation as an adjacent coastal state ("ACS") pursuant to the Deepwater Port Act. See 33 U.S.C. § 1508(a)(2)("The Secretary shall, upon request of a State, and after having received the recommendations of the Administrator of the National Oceanic and Atmospheric Administration, designate such State as an 'adjacent coastal State' if he determines that there is a risk of damage to the coastal environment of such State equal to or greater than the risk posed to a State directly connected by pipeline to the proposed deepwater port."). As reflected in the NOAA letter, such information <u>might</u> include information on New Jersey's interest in Cholera Bank, New Jersey's definition of "coastal environment," and the proposed deepwater port's projected impact on New Jersey's coastal environment. See R. 29, Mem. P.&A. Supp. of Pl.'s Mot . Leave to Submit the Recently Released National Oceanic and Atmospheric Administration Letter ("Motion to Submit Letter"), Ex. 1, Letter from Conrad C. Lautenbacher, Jr. To H. Keith Lesnick, Oct. 17, 2007. The letter additionally noted, "NOAA understands that MARAD is under a statutory deadline to make a decision on New Jersey's request. Accordingly, NOAA does not expect that MARAD will provide additional information to NOAA for further review, but rather that *MARAD [will] make a final determination based on its record and the requirements of the [Deepwater Port Act]*." <u>Id.</u> at 2 (emphasis added).

---

[1](...continued)
may withhold production of predecisional documents in an administrative record on the deliberative process privilege."). Plaintiff's administrative appeal of that decision was untimely, and defective on other grounds as well. See R. 24, Defendants' Opposition to Plaintiff's Motion to Compel Defendants to Supplement the Record, at 2. Notwithstanding this point, Defendants published the NOAA letter on the agency's administrative docket related to Plaintiff's deepwater port application.

NOAA's letter provided suggestions to the Maritime Administration regarding review of New Jersey's request and further recognized - and gave deference to - the Maritime Administrator's authority to make ACS determinations.

Contrary to what Plaintiff argues, the Maritime Administration followed up on the suggestions in the NOAA letter. Specifically, the record evidences that the Maritime Administration requested that New Jersey address the matters raised in the NOAA letter, that New Jersey did so, and that New Jersey's submission in this regard was sufficiently probative (and persuasive) for purposes of the Maritime Administrator's determination designating New Jersey as an ACS. In a November 1, 2007 letter, Ruth Ehinger, Coastal Program Manager, Department of Environment Protection for the State of New Jersey states:

> The deepwater port is proposed on Cholera Bank. Cholera Bank is heavily used by recreational and commercial fisherman. Prime fishing areas are designated a special area and marine fisheries are protected under New Jersey's Coastal Zone Management rules, which are enforceable policies under New Jersey's federally approved coastal management program. *Cholera Bank is, and has historically been, an important fishing ground for the New Jersey commercial fishing fleet and for recreational fishing. . .*
>
> *Clearly the Cholera Bank fishing ground would be affected by the construction of an island occupying 112 acres of ocean bottom, eliminating the habitat. Fisheries would also be affected as fishing boats would be excluded from the area around the island. Since fisherman from both New York and New Jersey are fishing these grounds, impacts would be comparable. . .*
>
> *Coastal environment as defined in the statute includes navigable waters (including lands therein and thereunder). The definition contains a list of resources that are included in the coastal environment, including fish, wildlife, and recreational values of lands, waters and resources.* The list is not exhaustive. *New Jersey considers its commercial and recreational fisheries to be part of its coastal environment.* Fish and wildlife, such as avian species, are highly mobile living resources that are also part of New Jersey's coastal environment. As these living things do not distinguish between New York and New Jersey, the risk to New Jersey is comparable to that of New York.

> Good water quality is critical to these living resources. Water quality will be affected during construction, operation, and maintenance of the proposed deepwater port. Any adverse affect on water quality could affect living resources of the coastal environment. The figure "Dominant Winds, Waves and Currents of the New York Bight," (Figure 2-2 Volume Three, Part One: Deepwater Port License Application) indicates that the prevailing direction of the currents is toward New Jersey and the direction of waves is into the New York/New Jersey Harbor. Accordingly, it is likely that water quality impacts to the coastal environment would be equal for New York and New Jersey.

See R. 29, Motion to Submit Letter, Ex. 2, Letter from Ruth Ehinger to H. Keith Lesnick, Nov. 1, 2007 (emphasis added).

As shown above, New Jersey addressed the issues raised in the October 17, 2007 NOAA letter – i.e. (1) New Jersey's interest in Cholera Bank, (2) New Jersey's definition of "coastal environment," and (3) the proposed deepwater port's projected impact on New Jersey's coastal environment. See also R. 11, Defs.' Mot. Dismiss and Op. Pl.'s Mot. Prelim Inj., Ex. 1, Letter from Joe S. Corzine, Governor, State of New Jersey, to Admiral Thad W. Allen and Sean T. Connaughton, Sept. 6, 2007 and Ex. 7, Letter from Jeanne Herb, Director, Department of Environmental Protection, State of New Jersey, to Keith Lesnick, Director, Office of Deepwater Ports and Offshore Activities, Maritime Administration, Dec. 21, 2007. Thus, there is ample evidence underscoring the propriety of the Maritime Administrator's ACS designation as to New Jersey. Plaintiff's evident self-serving disagreement with the determination is of no moment, and certainly does not demonstrate a substantial likelihood of success on the merits.

Plaintiff also argues that the NOAA letter "confirms that the Administrator's action was subject to a binding statutory deadline, which [the Administrator] exceeded." See R. 29, Motion to Submit Letter, p. 2. Plaintiff continues to charge forward with this argument notwithstanding the law of this Circuit, cited in Defendants' Motion to Dismiss and Opposition to Plaintiff's

4

Motion for a Preliminary Injunction, stating, "[i]t is well settled that. . .where Congress has placed an agency under a legal obligation to render a decision within a stated time period but has not set forth the consequences of exceeding that period, ordinarily the time period is directory rather than mandatory, and an agency will not lose jurisdiction over the matter upon expiration of that period." Gottlieb v. Peña, 41 F.3d 730, 733 (D.C. Cir. 1994); see also R. 11, Defs.' Mot. Dismiss and Op. Pl.'s Mot. Prelim Inj., pp. 29-30.  Neither the text nor the legislative history of the Deepwater Port Act indicates that the Act divests the Maritime Administrator of his authority to make an ACS designation if he exceeds the Act's deadline, and nothing in the NOAA letter, or the MARAD letter soliciting NOAA's views (attached hereto), states otherwise.

Plaintiff's argument is also problematic for another reason.  The Deepwater Port Act requires that public hearings on deepwater port applications conclude not later than 240 days after notice of the initial application has been published in the Federal Register, 33 U.S.C. § 1504(g), and that the Secretary of Transportation "shall approve or deny [an] application for a deepwater port for natural gas. . .not later than 90 days after the last public hearing on a proposed license," 33 U.S.C. § 1404((i)(4).  The Notice regarding Plaintiff's application was published on August 27, 2007.  See Atlantic Sea Island Group LLC, Safe Harbor Energy Liquefied Natural Gas Deepwater Port License Application, 72 Fed. Reg. 49041-01, 2007 WL 2408356 (Aug. 27, 2007).  However, to Plaintiff's benefit, the time requirements prescribed by the Deepwater Port Act were suspended to provide Plaintiff an additional period to address the deficiencies with its application.  See, e.g. R. 11, Defs.' Mot. Dismiss and Op. Pl.'s Mot. Prelim Inj., Ex. 10, Suspension Declaration of Mark A. Prescott, ¶¶ 4-10 (March 7, 2008).

If Plaintiff's argument regarding strict compliance with the statutory deadlines were to prevail, and Defendants strongly assert that it should not given the law of this Circuit, then it follows that the Maritime Administration should not have suspended the deadline for Plaintiff's benefit.  As such, a public hearing should have been held on Plaintiff's application, want of any Environmental Impact Statement  (see 33 U.S.C. § 1504(g)) and deficient on other grounds as well (see R. 11, Defs.' Mot. Dismiss and Op. Pl.'s Mot. Prelim Inj., Ex. 10, Suspension Declaration of Mark A. Prescott, ¶ 4), on April 23, 2008, and the Maritime Administrator should make his decision on Plaintiff's application 90 days from the April 23, 2008 date (see 33 U.S.C. 1504(i)(4)).  Given the continuing, significant deficiencies with its application, such a scenario would likely not benefit Plaintiff's application.  Of course, as stated above, Defendants believe that the case law of the District of Columbia Circuit provides that the Maritime Administration is not compelled to take such a harsh course and can modify the statutory deadlines set forth in the Deepwater Port Act, Gottlieb, 41 F.3d at 733 – both those applicable to New Jersey's request for ACS designation, as well as those applicable to the processing of Plaintiff's deepwater port application.  Accordingly, Plaintiff's argument that the NOAA letter "confirms that the Administrator's action was subject to a binding deadline," is without merit.

Date: April 30, 2008

Respectfully Submitted,

/s/ Jeffrey A. Taylor /mj
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell

Of Counsel:                                _____
PAUL M. GEIER.                       BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant General Counsel for    Assistant United States Attorney
 Litigation                                   U.S. Attorney's Office for the District of Columbia
DALE C. ANDREWS               555 4th Street, N.W., Rm. E-4915
Deputy Assistant General Counsel   Washington, D.C. 20530
 for Litigation                              Ph:  (202) 307-0492
PETER J. PLOCKI                   Fax: (202) 514-8780
Senior Trial Attorney                E-mail: beverly.russell@usdoj.gov
U.S. Department of Transportation

LANE H. NEMIROW
Trial Attorney
T.MITCHELL HUDSON
Attorney Advisor
Maritime Administration
U.S. Department of Transportation
Washington, D.C.  20590

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of *Defendants' Response to Plaintiff's Motion for Leave to File the October 17, 2007 Letter from the National Oceanic and Atmospheric Administration* was made by the Court's Electronic Case Filing System, to:

John F. Cooney
Venable, LLP
575 Seventh Street, N.W.
Washington, D.C.  20004
jfcooney@venable.com

and by electronic and first class mail to:

Rachel Horowitz
Office of the Attorney General of New Jersey
24 West Market Street
P.O. Box 093
Trenton, New Jersey 08625-0093

on this 30th day of April, 2008.


/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney



U.S. Department
of Transportation

**Maritime
Administration**

September 17, 2007

VADM Conrad C. Lautenbacher, Jr.
Under Secretary of Commerce for Oceans and Atmosphere and
Administrator of the National Oceanic and Atmospheric Administration
14th and Constitution Avenue, NW
Suite 5128
Washington, DC 20230

Dear Vice Admiral Lautenbacher:

The Maritime Administration and the U.S. Coast Guard have received an application from Atlantic Sea Island Group, LLC to own, construct, and operate a Liquefied Natural Gas (LNG) Deepwater Port authorized under the provisions of the Deepwater Port Act (33 U.S.C. § 1501 *et seq.* (the Act)). The proposed port, known as Safe Harbor Energy, would be located approximately 13.5 miles south of Long Beach, New York, and 23 miles southeast of the New York Harbor entrance in the Atlantic Ocean. The notice of application was published in the Federal Register on August 27, 2007. According to the requirements of Sections 1502 (1) and 1508 (a)(1) of the Act, the Maritime Administration and the U.S. Coast Guard designated the State of New York as an Adjacent Coastal State.

By letter dated September 6, 2007, New Jersey Governor Jon S. Corzine, acting in accordance with Section 1508 (a)(2) of the Act, requested designation of Adjacent Coastal State status, citing potential impacts to the State of New Jersey from the proposed Safe Harbor Energy project. Pursuant to Section 1508 (a)(2) of the Act, the Maritime Administrator, by delegated authority, must make a determination regarding the designation of Adjacent Coastal State status after receiving a timely request from a State Governor and after considering the recommendation of the Administrator of the National Oceanic and Atmospheric Administration. The Maritime Administrator must grant Adjacent Coastal State status if the risk of damage to the requesting State's coastal environment is equal to or greater than the risk posed to a State that would be directly connected by pipeline to the proposed deepwater port (in this instance, New York). The Maritime Administrator must make the designation no later than 45 days after the date of receipt of the request.

The letter from Governor Corzine was received by the Maritime Administration and the U.S. Coast Guard by facsimile on September 6, 2007. As such, the Maritime Administrator must render a decision on Adjacent Coastal State status for the State of New Jersey by October 22, 2007. To this end, we request your recommendation on the



designation of New Jersey as an Adjacent Coastal State for the Safe Harbor Energy project.

Should you require additional information, please contact me at 202-366-1624 or keith.lesnick@dot.gov. Please note that the application and other project data and correspondence may be accessed electronically by visiting the Department of Transportation Docket Management System at http://dms.dot.gov. Please reference the Safe Harbor Energy project docket number USCG-2007-28535.

To allow timely consideration of your comments, we request that you provide your recommendation to us no later than October 10, 2007.

We appreciate your attention in this matter and look forward to receiving your comments.

Sincerely,

H. Keith Lesnick,
Director, Office of Deepwater
Ports and Offshore Activities


Attachment: September 6, 2007, Letter from New Jersey Governor Jon S. Corzine.



# State of New Jersey
OFFICE OF THE GOVERNOR
PO BOX 001
TRENTON NJ 08625-0001

JON S. CORZINE
*Governor*

September 6, 2007

Admiral Thad W. Allen
Commandant (CG-3P)
U.S. Coast Guard
2100 Second St. SW
Washington, DC 20593

Sean T. Connaughton
Maritime Administrator
U.S. Maritime Administration
1200 New Jersey Avenue, SE (MAR-530)
Second Floor, West Wing
Washington, DC 20590

Dear Admiral Allen and Mr. Connaughton:

    Atlantic Sea Island Group LLC has applied to the Coast Guard and the Maritime Administration for a license to own, construct and operate a deepwater LNG port in the Atlantic Ocean off New Jersey and New York. Notice of the application, known as Safe Harbor Energy Liquefied Natural Gas Deepwater Port License (USCG-2007-28535), was published in the Federal Register on August 27, 2007. The notice indicates that because of the proposed island's proximity to New York, New York has been designated an adjacent coastal state under the Deepwater Port Act. The proposed island would be within 15 miles of New York and is approximately 19 miles from New Jersey. However, the proposed alternative pipeline alignment that is part of the deepwater port application would be well within the 15 mile standard to designate New Jersey an adjacent coastal state. As defined in the Deepwater Port Act, the deepwater port subject to this licensing includes all components and equipment, including pipelines, pumping or compressor stations, service platforms, buoys mooring lines, and similar facilities that are approved or proposed for construction and operation as part of the deepwater port. By this definition alone New Jersey should be considered an adjacent coastal state due to the proximity of the alternative alignment.

    The Deepwater Port Act also provides for a state to be designated an adjacent coastal state if there is a risk of damage to the coastal environment of such state equal to or greater than the risk posed to a state directly connected by pipeline to the deepwater port. The proposed port will connect to the existing Transco pipeline running from

Morgan, New Jersey to Long Beach, New York. Thus, New Jersey considers that it is directly connected to the deepwater port. Moreover, the alternative pipeline alignment would be less than 9 miles from New Jersey, well within the 15 mile criterion.

Regardless of whether the connection to the Transco pipeline emanating from the New Jersey shore constitutes a direct connection to either state, New Jersey's coastal environment is equally impacted by the proposed facilities as New York's coastal environment. New Jersey has robust commercial and recreational fisheries that are vital to the State's economy, as well as to the history and character of New Jersey's coastal environment. The proposed facility will destroy a historic prime fishing area, known as Cholera Bank, which is protected under New Jersey's federally approved coastal management program. Not only will the creation of an island over this prime fishing area be detrimental to this unique environment but the proposed facility's exclusion zone will prohibit vessels in a 633 acre area, further diminishing this important resource.

The island is proposed between the approach lanes to the Port of New York and New Jersey. The Port is a critical element of New Jersey's economy. According to the Summer 2007 issue of *PortViews* (Volume 6, No. 7), published by the Port of New York and New Jersey, "containerized cargo volumes in the Port of New York and New Jersey rose nearly 8 percent in 2006 to a new record high… The dollar value of all cargo moving through the port in 2006 exceeded $149 billion for the first time, up 13 percent from 2005. The number of loaded and empty TEUs (20-foot equivalent units) handled in the port exceeded 5 million for the first time." In addition, "ExpressRail, the Port Authority's on-dock rail terminals in New Jersey, set a new record in 2006, handling 338,882 containers, 11.8 percent more than in 2005." Accordingly, any impediments to navigation would adversely affect New Jersey in a manner equal to or greater than its effects on New York.

The predominant current direction in the area of the proposed deepwater port is toward New Jersey. Accordingly, turbidity and other water quality impacts during construction would move toward New Jersey's waters, as well as to the important commercial and recreational fishing grounds surrounding the proposed port, as would any spills at the island during construction and operation of the facility.

The application does not specify the exact location of shore based facilities that would service the deepwater port, or from which construction would be staged. However, it does indicate that the facilities would be located within a 40 mile radius of the proposed island. This radius includes shore facilities in New Jersey. Accordingly, the effects on the coastal environment of New Jersey for construction staging and long-term service of the deepwater port would be felt in New Jersey in equal or greater amount than in New York.

New Jersey should be designated an adjacent coastal state under the Deepwater Port Act because the alternative pipeline alignment will be well within 15 miles of New Jersey's Coast, New Jersey will be directly connected to the deepwater port by the Transco pipeline, and there is equal risk to New Jersey's coastal environment as to the

coastal environment of New York. It is imperative that New Jersey be an integral part of the review of this proposal due to the inherent risks associated with a deepwater port within as busy of a port region as the New Jersey/ New York Port complex.

Sincerely,

Jon S. Corzine
Governor

c:  Mr. H. Keith Lesnick, MARAD
    Mr. Mark A. Prescott, USCG