## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
ATLANTIC SEA ISLAND GROUP LLC, )
                               )
          Plaintiff,           )
                               )
          v.                   )     Civil Action No. 08-259 (RWR)
                               )
SEAN T. CONNAUGHTON, et al.,   )
                               )
          Defendants.          )
_____)
```

### MEMORANDUM OPINION

Atlantic Sea Island Group LLC ("ASIG") brings this action against Sean T. Connaughton, the Administrator of the Maritime Administration, and Mary E. Peters, the Secretary of the Department of Transportation ("DOT"), alleging that the Administrator's decision under the Deepwater Port Act ("DWPA"), 33 U.S.C. §§ 1501-1524, to designate New Jersey as an additional adjacent coastal state with respect to ASIG's application for a license to construct and operate the Safe Harbor Energy Liquified Natural Gas Deepwater Port ("Safe Harbor Port") was unlawful. ASIG has filed a motion for a preliminary injunction to enjoin the defendants from enforcing the Administrator's decision and to order the defendants to continue processing ASIG's license. New Jersey has moved to intervene, and the defendants have filed a motion to dismiss ASIG's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because New Jersey is entitled

to intervene, its motion will be granted.  Because the
Administrator had legal authority to designate New Jersey, and
because the Administrator's decision was not arbitrary or
capricious and was valid even if issued outside of the statutory
time frame, defendants' motion to dismiss under Rule 12(b)(6),
treated as a motion for summary judgment, will be granted and
ASIG's motion for a preliminary injunction will be denied as
moot.

<u>BACKGROUND</u>

The DWPA "authorize[s] and regulate[s] the location,
ownership, construction, and operation of deepwater ports in
waters beyond the territorial limits of the United States"
through the issuance of licenses for "the ownership,
construction, and operation of a deepwater port."  33 U.S.C.
§§ 1501(a), 1503.  A license may not be issued under the DWPA
unless the governor of an adjacent coastal state approves the
issuance of the license.  33 U.S.C. §§ 1503(c)(8); 1508(b)(1).
There are three ways a state can be designated as an adjacent
coastal state for a pending license.  Under 33 U.S.C.
§ 1508(a)(1), the Secretary "shall designate as an 'adjacent
coastal State' any coastal State which (A) would be directly
connected by pipeline to [the proposed] deepwater port . . . or
(B) would be located within 15 miles of [the] proposed deepwater
port."  33 U.S.C. § 1508(a)(1).  Alternatively, the Secretary,

-3-

> shall, upon request of a State, and after having
> received the recommendations of the Administrator of
> the National Oceanic and Atmospheric Administration
> ["NOAA"], designate such state as an "adjacent coastal
> State" if [s]he determines that there is a risk of
> damage to the coastal environment of such State equal
> to or greater than the risk posed to a State directly
> connected by pipeline to the proposed deepwater port.

33 U.S.C. § 1508(a)(2). A state seeking to be designated as an adjacent coastal state under § 1508(a)(2) must request designation within fourteen days after notice of an application for a proposed deepwater port is published in the Federal Register. Id. The statute further provides that the Secretary "shall make the designation . . . not later than the 45th day after the date [she] receives such a request from a State." Id.

ASIG is a Delaware corporation "engaged in the business of owning, constructing, and operating . . . the Safe Harbor Energy port[] that will receive, store, and re-vaporize liquified natural gas." (Compl. ¶ 1.) On May 8, 2007, ASIG submitted an application to the Coast Guard and the Maritime Administration for a license under the DWPA to construct and operate the Safe Harbor Port. (Id. ¶ 31.) The proposed port is to be located approximately 13.5 miles off the coast of New York and 19 miles off the coast of New Jersey. (Id.)

On August 27, 2007, the Maritime Administration published a notice that the ASIG license application was deemed complete. 72 Fed. Reg. 49,041 (Aug. 27, 2007). In that notice, the Maritime Administration designated New York as an adjacent coastal state.

-4-

Id.  In response to the notice of ASIG's application, the Governor of New Jersey submitted a letter dated September 6, 2007 to the Administrator and the Commandant of the Coast Guard requesting that New Jersey be designated as an additional coastal state for the Safe Harbor Port.  (R. at 25-27.)  The Secretary solicited the recommendation of the NOAA, which questioned the sufficiency of New Jersey's submission and suggested that the Administrator request additional information from New Jersey. (R. at 59-60.)  In response to NOAA's concerns, New Jersey submitted an additional letter in support of its application. (R. at 70-72.)  On November 2, 2007, the Administrator sent a letter to the Governor of New Jersey informing the Governor that he had designated New Jersey as an additional adjacent coastal state for the Safe Harbor Port.  (R. at 74-75.)  ASIG subsequently requested that the Administrator reconsider his decision to designate New Jersey as an additional adjacent coastal state.  (R. at 77-78.)  After further submissions from ASIG, New Jersey, and other interested third parties, the Administrator denied ASIG's request for reconsideration in a letter dated February 8, 2008 and affirmed his decision to designate New Jersey as an additional coastal state. (R. at 112-17.)

ASIG filed this action alleging that the Maritime Administrator's designation of New Jersey as an adjacent coastal

-5-

state was unlawful for the following reasons: (1) the
Administrator did not have legal authority to do so under the
controlling statute and regulations; (2) the Administrator's
decision violated the mandatory statutory deadline for making an
adjacent coastal state designation; (3) the Administrator did not
apply the standard for designating an adjacent coastal state
found in 33 U.S.C. § 1508(a)(2); and (4) the factual record does
not support the conclusion that New Jersey is an adjacent coastal
state.  (Compl. ¶¶ 51-57.)  ASIG also has filed a motion for a
preliminary injunction to enjoin the Administrator from
permitting New Jersey to participate in the review of ASIG's
license application as an adjacent coastal state and to compel
the Administrator to continue the application process.  The state
of New Jersey has moved to intervene as of right under Rule
24(a)(2).  The defendants have filed a motion to dismiss all
claims under Rules 12(b)(1) and 12(b)(6).[1]

## DISCUSSION

I.   STANDING

The defendants contend that the complaint should be
dismissed under Rule 12(b)(1) for lack of jurisdiction because
ASIG does not have constitutional standing to bring its claims.

---

[1] Defendants also have a filed a motion for leave to file
the declaration of Mark A. Prescott.  ASIG also has filed a
motion for a status hearing and a motion for a hearing on its
preliminary injunction motion.

-6-

(Defs.' Mem. in Support of its Mot. to Dismiss and Opp'n to Pl.'s
Mot. for a Prelim. Inj. ("Defs.' Mem") at 16-17.)  "On a motion
to dismiss for lack of subject-matter jurisdiction pursuant to
Rule 12(b)(1), the plaintiff bears the burden of establishing
that the court has subject-matter jurisdiction."  Shuler v.
United States, 448 F. Supp. 2d 13, 17 (D.D.C. 2006) (citing Lujan
v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  In
reviewing the motion, a court accepts as true all of the factual
allegations contained in the complaint, see Lujan, 504 U.S. at
560, and may also consider "undisputed facts evidenced in the
record."  Coal. for Underground Expansion v. Mineta, 333 F.3d
193, 198 (D.C. Cir. 2003); see also Tootle v. Sec'y of the Navy,
446 F.3d 167, 174 (D.C. Cir. 2006) (explaining that a court may
look to certain materials beyond the pleadings to resolve
disputed jurisdictional facts when considering a motion to
dismiss under Rule 12(b)(1)).  The "nonmoving party is entitled
to all reasonable inferences that can be drawn in [its] favor."
Artis v. Greenspan, 158 F.3d 1301, 1306 (D.C. Cir. 1998).

     To satisfy the constitutional standing inquiry, ASIG "must
show: (1) injury-in-fact; (2) causation, and (3) redressability."
Fund for Animals, Inc. v. Norton, 322 F.3d 728, 732-33 (D.C. Cir.
2003) (citing Lujan, 504 U.S. at 560-61).  The alleged injury-in-
fact must be "concrete and particularized" and "actual or
imminent," and the injury must be "'fairly . . . trace[able] to

the challenged action of the defendant[.]'"  Lujan, 504 U.S. at
560-61 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26,
41-42 (1976)).  Further, "it must be 'likely,' as opposed to
merely 'speculative,' that the injury will be 'redressed by a
favorable decision.'"  Am. Library Ass'n v. FCC, 401 F.3d 489,
493 (D.C. Cir. 2005) (quoting Simon, 426 U.S. at 41-42).  The
defendants contend that ASIG's alleged injury-in-fact is only
hypothetical because New Jersey has not yet imposed any
conditions on ASIG's license application or expressed any
disapproval, and if New Jersey were to take such actions, ASIG's
injury would be traceable to New Jersey's actions, rather than
the Administrator's.  (Defs.' Mem. at 18-19.)

Under the DWPA, ASIG's license may not be issued without the
approval of the governors of each adjacent coastal state.  33
U.S.C. §§ 1503(c)(8), 1508(b)(1).  Further, under 33 U.S.C.
§ 1504(g), a public hearing on a pending license application must
be held in each adjacent coastal state before a license may be
issued.  ASIG contends, and the defendants do not dispute, that
based on its experience with New York, ASIG will be required to
bear costs in preparation for New Jersey's hearing and for any
other negotiations with New Jersey necessary to obtain New
Jersey's approval of its license.  (Pl.'s Reply in Support of its
Mot. for a Prelim. Inj. at 22-23.)  Thus, ASIG has sufficiently
established a concrete, imminent injury traceable to the

-8-

Administrator's designation decision.  Further, such injury would likely be redressed by ASIG's requested relief -- an injunction barring the defendants from treating New Jersey as an adjacent coastal state (Am. Compl. at 23) -- because a public hearing in New Jersey would no longer be required under the statute and ASIG's license would no longer be contingent upon New Jersey's approval.

## II.  NEW JERSEY'S MOTION TO INTERVENE

New Jersey seeks to intervene as a matter of right as a defendant in this action.  Under Federal Rule of Civil Procedure 24(a), intervention as a matter of right should be granted when the movant

> claims an interest relating to the property or transaction that is the subject of the action, and [the movant] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  The D.C. Circuit "ha[s] identified four prerequisites to interven[tion] as of right: '(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.'"  <u>Karsner v. Lothian</u>, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting <u>SEC v. Prudential Sec. Inc.</u>, 136 F.3d 153, 156 (D.C. Cir. 1998)).  In addition, "because a Rule 24 intervenor

-9-

seeks to participate on an equal footing with the original

parties to the suit," the applicant also must establish that he

has standing to participate in the action.  Fund for Animals, 322

F.3d at 732 (quoting City of Cleveland v. NRC, 17 F.3d 1515, 1517

(D.C. Cir. 1994)).

First, New Jersey has standing to participate in this action

as it satisfies the injury-in-fact, causation, and redressability

showings.  ASIG seeks declaratory relief vacating the

Administrator's designation decision and enjoining the Secretary

and Administrator from re-designating New Jersey as an additional

adjacent coastal state.  (Compl. at 22-23.)  If ASIG succeeds on

its claims, New Jersey will be injured by the loss of the

adjacent coastal state status and the statutory privileges

associated with that status.  A decision favorable to the

defendants would prevent such an injury.

Next, New Jersey satisfies the four prerequisites to

intervention as of right under Rule 24(a)(2).  New Jersey's

motion is timely, having been filed less than one month after the

complaint was filed, before the current defendants were obligated

to respond to the complaint.  For the second factor, "standing

alone is sufficient to establish that the [intervenor] has 'an

interest relating to the property or transaction which is the

subject of the action[.]'"  Fund for Animals, 322 F.3d at 735

(quoting Fed. R. Civ. P. 24(a)(2)).  Since the risk to New Jersey

of losing its adjacent coastal state status is an injury that
satisfies standing, it is also a sufficient interest for the
purpose of Rule 24(a)(2).

Third, whether a proposed intervenor's interest may be
impaired by disposition of an action is determined by "looking to
the 'practical consequences' of denying intervention, even where
the possibility of future challenge . . . remain[s] available."
Natural Res. Def. Council v. Costle, 561 F.2d 904, 909 (D.C. Cir.
1977); id. at 910 (stating that "it is not enough [of a reason]
to deny intervention under 24(a)(2) [that] applicants may
vindicate their interests in some later, albeit more burdensome,
litigation"); see Nuesse v. Camp, 385 F.2d 694, 702 (D.C. Cir.
1967) (recognizing that "stare decisis principles may in some
cases supply the practical disadvantage that warrants
intervention as of right").  Where the relief sought is to set
aside agency action that affects a proposed intervenor, such
relief could practically impair the proposed intervenor's
interest since the proposed intervenor could no longer rely on
the agency's announced decision and would need to restart the
administrative process.  See Am. Horse Prot. Ass'n, Inc. v.
Veneman, 200 F.R.D. 153, 158 (D.D.C. 2001).  Because ASIG's
requested relief, if granted, would alter New Jersey's current
role in the consideration of ASIG's license application and
require New Jersey to take action to regain its current

-11-

regulatory status, New Jersey has alleged sufficient impairment
of its interest to support intervention as of right.

Finally, under Rule 24(a)(2), New Jersey's interest may not
be adequately represented by the current defendants.  ASIG
contends that the current defendants adequately represent New
Jersey's interest because there is "an extensive track record of
cooperation" between New Jersey and the current defendants.
(Pl.'s Opp'n to New Jersey's Mot. to Intervene at 4-7.)  However,
under this factor, New Jersey need only show that "the
representation of [its] interest 'may be' inadequate; and the
burden of making that showing should be treated as minimal."
Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)
(emphasis added); Fund for Animals, 322 F.3d at 736 n.7 ("[T]he
standard for measuring inadequacy is low[.]").  While New Jersey
and the current defendants, who are federal officers, both have
an interest in maintaining the Administrator's designation, the
federal defendants have an obligation to represent the interests
of the entire country, see County of San Miguel, Colo. v.
MacDonald, 244 F.R.D. 36, 48 (D.D.C. 2007); Fund for Animals, 322
F.3d at 736 ("[W]e have often concluded that governmental
entities do not adequately represent the interests of aspiring
intervenors."), and it is not clear that the federal defendants'
interests will always align with the narrower interests of New
Jersey.  As New Jersey asserts, the federal defendants "cannot be

expected to protect New Jersey's interest to its fullest extent."
(New Jersey's Mem. in Support of its Mot. to Intervene at 9.)
Accordingly, New Jersey has met its minimal burden of showing the
inadequacy of current representation of its interests.  For these
reasons, New Jersey's motion to intervene will be granted.

III. ADMINISTRATOR'S DESIGNATION DECISION

A party may move under Rule 12(b)(6) to dismiss a complaint
for failure to state a claim upon which relief can be granted.
See Fed. R. Civ. P. 12(b)(6).  "If, on a motion under Rule
12(b)(6) . . ., matters outside the pleadings are presented to
and not excluded by the court, the motion must be treated as one
for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); see
Wiley v. Glassman, 511 F.3d 151, 160 (D.C. Cir. 2008).  The
defendants have filed the administrative record in response to a
May 19, 2008 order directing the defendants to produce the
complete administrative record for consideration of the
plaintiff's motion for a preliminary injunction.  In addition,
both parties have attached additional exhibits to their filings.
Since the administrative record and parties' additional exhibits
will be considered, the defendants' motion will be treated as one
for summary judgment.

Summary judgment may be granted only where the "pleadings,
the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material

-13-

fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002).  The relevant inquiry "is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that is capable of affecting the outcome of the litigation.  Id. at 248.  A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," id., as opposed to evidence that "is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  The burden falls on the moving party to provide a sufficient factual record that demonstrates the absence of a genuine issue of material fact.  See Beard v. Banks, 548 U.S. 521, 529 (2006).  If the moving party meets this burden, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original).  In considering a motion for summary judgment, all "justifiable inferences" from the evidence are to be drawn in favor of the nonmovant.  Anderson, 477 U.S. at 255.

-14-

A.   Final agency action

The defendants allege that ASIG's claims must be dismissed
because the Administrator's designation is not a final agency
action reviewable under the APA.  (Defs.' Mem. at 22-23.)
Defendants contend that New Jersey's designation as an additional
adjacent coastal state is merely an interlocutory step toward the
final licensing decision and the licensing decision is the
reviewable final action that ASIG may challenge.  (Id.)  An
agency action is a "final agency action" reviewable under the APA
if it "mark[s] the consummation of the agency's decisionmaking
process" and it is an action "by which rights or obligations have
been determined, or from which legal consequences flow[.]"
Bennett v. Spear, 520 U.S. 154, 178 (1997).  Under the DWPA, an
adjacent coastal state is granted the right to approve (by
affirmative conduct or failure to timely object) the issuance of
a deepwater port license before the Secretary is authorized to
issue such license.  33 U.S.C. §§ 1503(c)(8), 1508(b)(1).  Thus,
the decision whether to designate New Jersey as an additional
adjacent coastal state under § 1508(a)(2) marks the consummation
of the agency's decisionmaking process with respect to the scope
of New Jersey's role in the issuance of ASIG's license and is a
decision which determines New Jersey's rights.  Accordingly, the
Administrator's designation decision is a reviewable final agency
action.

-15-

B.   <u>Administrator's authority to designate under
     § 1508(a)(2)</u>

ASIG contends the Administrator's decision was unlawful
because "the Administrator did not have legal authority to
designate New Jersey as an additional 'adjacent coastal State'
under Section 1508(a)(2)."  (Pl.'s Mem. in Support of its Mot.
for a Prelim. Inj. ("Pl.'s Prelim. Inj. Mem.") at 14, 17-18.)
ASIG alleges that the Secretary delegated the authority to make
an adjacent coastal state designation exclusively to the
Commandant of the Coast Guard in its 1975 delegation and, upon
the Coast Guard's transfer to the Department of Homeland Security
in 2002, <u>see</u> 6 U.S.C. § 468(b), the Secretary could no longer
modify such delegation because the Homeland Security Act of 2002
mandated that the Coast Guard's authority at the time of transfer
could be changed only by subsequent acts of Congress.  (Pl.'s
Prelim. Inj. Mem. at 17-18, 20 (citing 6 U.S.C. § 468(c)).)
Accordingly, ASIG argues that the Coast Guard regulation found at
33 C.F.R. § 148.217(d) governs how a lawful adjacent coastal
state designation under § 1508(a)(2) must be made.  (Pl.'s
Prelim. Inj. Mem. at 21.)  It states that "the Commandant, in
concurrence with the MARAD [Maritime] Administrator" designates
an additional adjacent coastal state if he finds there is a risk
to the requesting state's coastal environment that is equal to or
greater than the risk to the coastal environment of the state
directly connected to the pipeline.  33 C.F.R. § 148.217(d).  By

contrast, the defendants maintain that the Secretary reserved the authority to make an adjacent coastal state designation under 49 C.F.R. § 1.44(o) until he delegated such authority to the Administrator in 2003 by repealing § 1.44(o) and amending 49 C.F.R. § 1.66 -- the section describing the Administrator's delegated authority -- to include "[t]he authority to issue . . . a license for the construction and operation of a deepwater port." (See Defs.' Mem at 28; R. at 113.)

A court generally "accords substantial deference to an agency's interpretations of its own regulations." Nat'l Wildlife Fed. v. Browner, 127 F.3d 1126, 1129 (D.C. Cir. 1997) (citing Auer v. Robbins, 519 U.S. 542 (1997) and Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)).  The court's "task is not to decide which among several competing interpretations best serves the regulatory purpose.  Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ., 512 U.S. at 512 (internal quotation marks omitted).

The DWPA authorizes the Secretary to "issue regulations to carry out the purposes and provisions of [the statute.]"  33 U.S.C. § 1504(a).  In DOT's first delegation of authority under the DWPA, the Secretary delegated to the Commandant of the Coast Guard the authority to "[c]arry out the functions vested in the

Secretary by the [DWPA] . . . except as reserved by [49 C.F.R.] § 1.44(o) and delegated by [49 C.F.R.] § 1.53(c)."[2]  49 C.F.R. § 1.46(s) (1975).  Under 49 C.F.R. § 1.44(o), the Secretary reserved "[t]he authority to issue, transfer, amend, or renew a license for the construction and operation of a deepwater port" under 33 U.S.C. § 1503(b).  49 C.F.R. § 1.44(o) (1975).  While this reservation was in effect, the Secretary issued two opinions in 1976 responding to states' requests to be designated as adjacent coastal states under § 1508(a)(2).  See U.S. Dep't of Transp., Secretary's Decision Respecting the Request by the State of Florida for Status as an "Adjacent Coastal State" Under the Deepwater Ports Act of 1974 in Respect of the Applications Thereunder of LOOP, Inc. and Seadock, Inc. (Mar. 25, 1976); U.S. Dep't of Transp., Secretary's Decision Respecting the Request by the State of Mississippi for Status as "Adjacent Coastal State" Under the Deepwater Port Act of 1974 in Respect of the Applications Thereunder of LOOP, Inc. and Seadock, Inc. (Mar. 25, 1976).

In 1997, the Secretary revised the delegation of authority to the Coast Guard under the DWPA by granting shared authority to the Maritime Administration, which had been transferred to the

---

[2] 49 C.F.R. § 1.53(c) delegated to the Materials Transportation Bureau Director the authority to establish, enforce, and review regulations concerning safe construction, operation, and maintenance of pipelines.  49 C.F.R. § 1.53(c) (1975).

-18-

DOT after the original DWPA delegation.  Under the 1997

delegation, the Coast Guard had the following authority relating

to the DWPA:

> (1) The authority to process applications for the
> issuance, transfer, or amendment of a license for the
> construction and operation of a deepwater port (33
> U.S.C. 1503(b)) in coordination with the Administrator
> of the Maritime Administration.
> (2) Carry out other functions and responsibilities
> vested in the Secretary by the [DWPA] . . . except as
> reserved by § 1.44(o) and delegated by §§ 1.53(a)(3)
> and 1.66(aa).

49 C.F.R. § 1.46(s) (1997); 62 Fed. Reg. 11,383, 11,383 (Mar. 12,

1997).  In its first enactment, § 1.66(aa) delegated to the

Maritime Administrator, among other limited grants of authority

not relevant to this case:

> (1) The authority to process applications for the
> issuance, transfer, or amendment of a license for the
> construction and operation of a deepwater port (33
> U.S.C. 1503(b)) in coordination with the Commandant of
> the Coast Guard.
> (2) Approval of fees charged by adjacent coastal States
> for use of a deepwater port and directly related land-
> based facilities (33 U.S.C. 1504(h)(2)).

49 C.F.R. § 1.66(aa) (1997); 62 Fed. Reg. at 11,383.  In 2003,

the Secretary repealed its reservation of authority in § 1.44(o)

and amended the delegation of authority to the Maritime

Administrator by revising § 1.66(aa) to include "[t]he authority

to issue, transfer, amend, or reinstate a license for the

construction and operation of a deepwater port."  68 Fed. Reg.

36,496, 36,497 (June 18, 2003).

-19-

In this case, the defendants' interpretation of the Administrator's authority to make an adjacent coastal state designation under § 1508(a)(2) is a reasonable interpretation of the DWPA regulations that is consistent with the language of the statute and the Secretary's previous actions under the DWPA. Although the Secretary delegated broad authority to the Coast Guard in 1975, she reserved the power "to issue, transfer, amend or renew a [deepwater port] license." See 40 Fed. Reg. 43,901, 43,905 (Sept. 24, 1975) (codified at 49 C.F.R. § 1.44(o)). The defendants contend that included within the authority to issue a license is the authority to designate an adjacent coastal state under § 1508. (See Defs.' Mem. at 27-29; R. at 113.) The section of the DWPA that governs issuance of a "license for ownership, construction, and operation of a deepwater port," 33 U.S.C. § 1503, states that "[t]he Secretary may issue a license . . . if . . . the Governor of the adjacent coastal State or States, pursuant to section 1508 of this title, approves, or is presumed to approve, issuance of the license[.]" 33 U.S.C. § 1503(c)(8). Because the statute conditions the Secretary's ability to issue a license on the approval of the Governor of a designated adjacent coastal state, it is a reasonable interpretation of the scope of the authority to issue a license to include the authority to designate adjacent coastal states and thereby designate whose approval is necessary before issuance.

-20-

Moreover, in 1976, after the 1975 delegation of authority to the Coast Guard, the Secretary, rather than the Commandant, issued the two opinions in response to requests by Florida and Mississippi to be designated as adjacent coastal states for a pending license application. <u>See</u> Secretary's Decision Respecting the Request by the State of Florida, <u>supra</u>; Secretary's Decision Respecting the Request by the State of Mississippi, <u>supra</u>. The Commandant has never issued an opinion regarding a § 1508(a)(2) designation request. (Defs.' Mem. at 28.) Thus, the Secretary's historical course of action is consistent with the defendants' interpretation of the regulations. Further, because the Secretary retained the authority to designate an adjacent coastal state under 49 C.F.R. § 1.44(o) until she delegated it to the Administrator, the Coast Guard's transfer to the Department of Homeland Security had no impact on the Administrator's later-acquired authority.

Admittedly, the absence of any Maritime or DOT regulation explicitly defining the Administrator's authority to designate under § 1508(a)(2), and the existence of Coast Guard regulation 33 C.F.R. § 148.217(d) stating that the designation decision is to be made by the Commandant in concurrence with the Administrator, is somewhat troubling. The Secretary's delegating regulations do not clearly establish if or when the Commandant acquired authority to designate an adjacent coastal state under

-21-

§ 1508(a)(2).  According the benefit of the ambiguity to ASIG,
which does not challenge the validity of the Coast Guard
regulations, those regulations can be presumed to be a valid
interpretation of the Coast Guard's authority.  However, even if
the Commandant has authority to designate an adjacent coastal
state as part of his shared delegation of the authority to
process applications, since the Secretary delegated to the
Administrator her ultimate authority <u>to issue</u> a license under the
DWPA in 2003, the Administrator's assumption of the Secretary's
supervisory role necessarily includes the authority to designate.

The Coast Guard's definition of "adjacent coastal State"
reflects the evolution of this supervisory authority to
designate.  In its 2002 proposed rulemaking, the Coast Guard
defined an adjacent coastal state in 33 C.F.R. § 148.5 to include
"any coastal State . . . designated . . . by the Secretary of
Transportation under 33 U.S.C. § 1508(a)(2).  67 Fed. Reg.
37,934, 37,935 (May 30, 2002).  The final rule, published in
2006, after the Secretary delegated his authority to issue
licenses to the Administrator, amended the relevant sections to
incorporate the increased authority of the Administrator.  <u>See</u> 71
Fed. Reg. 57,643, 57,652 (Sept. 29, 2006).  Revised 33 C.F.R.
§ 148.5 defined an adjacent coastal state to include "any coastal
State . . . designated as an adjacent coastal State by the
Administrator of the Maritime Administration under 33 U.S.C.

-22-

[§] 1508(a)(2)."  Id.  Thus, to the extent 33 C.F.R. § 148.217
establishes the Commandant's authority to designate an adjacent
coastal state under § 1508(a)(2), it does not foreclose the
authority of the Administrator to also make such a designation
under his broader authority to issue a license.  Ultimately, the
defendants' interpretation of the Administrator's authority under
49 C.F.R. § 1.66(aa) to designate an adjacent coastal state is a
reasonable interpretation consistent with the language of the
Secretary's regulations and the history of the Secretary's
implementation of such regulations and will be accorded
deference.

     C.   <u>Forty-five day time period</u>

    ASIG alleges that the Administrator's November 2, 2007
designation is null and void because it was made outside of the
45-day statutory time frame.  (Compl. ¶ 21.)  <u>See</u> 33 U.S.C.
§ 1508(a)(2) ("The Secretary shall make the designation required
. . . not later than the 45th day after the date he receives such
a request from a State.")  ASIG contends that New Jersey's
request was received on September 10, 2007, the date it was
formally posted on the agency's docket, and the Administrator was
therefore obligated under the statute to determine whether to
designate New Jersey as an adjacent coastal state by October 25,

-23-

2007.[3]  (Pl.'s Prelim. Inj. Mem. at 24.)  Further, ASIG asserts

that the Administrator's failure to designate New Jersey as an

adjacent coastal state within the forty-five day time limit bars

the Administrator from making an untimely designation.  (Id.)

The Supreme Court has held that when "there are less drastic

remedies available for failure to meet a statutory deadline,

courts should not assume that Congress intended the agency to

lose its power to act" once the deadline has passed.  Brock v.

Pierce County, 476 U.S. 253, 260 (1986).  Applying this

rationale, courts have concluded that statutory time limits for

which there is no accompanying statutorily prescribed consequence

should generally be viewed as "directory," rather than mandatory

and an agency is not barred from acting outside the prescribed

time period.  See, e.g., Brock, 476 U.S. at 261-66; Gottlieb v.

Pena, 41 F.3d 730, 733-36 (D.C. Cir. 1994).  In such cases, when

there has been a failure to act within the statutory time period,

the appropriate remedy for an agency's failure to act is not for

the agency to lose jurisdiction to act, but rather for the court

to issue an order compelling the agency to act.  See In re Barr

Labs., Inc., 930 F.2d 72, 74 (D.C. Cir. 1991).

_____

[3]The defendants contend that the Administrator's decision
was timely because the receipt date was September 18, 2007.  (R.
at 116.)  Viewing the facts in a light most favorable to ASIG,
September 10, 2007 will be used as the receipt date for New
Jersey's designation request.

-24-

In this case, although 33 U.S.C. § 1508(a)(2) establishes a forty-five day time frame in which the Secretary must respond to a state's request for adjacent coastal state designation, the statute does not establish any consequences for the Secretary's failure to act by the forty-fifth day.  Absent statutory consequences that would suggest that Congress intended to preclude agency action outside the allotted time period, the time frame must be viewed as directory.  Accordingly, although the Administrator's decision may have exceeded the directory 45-day time frame, it still has full legal effect and ASIG is entitled to no relief.

     D.   <u>Administrator's decision</u>

ASIG contends that the Administrator's designation of New Jersey as an adjacent coastal state was arbitrary and capricious in violation of the Administrative Procedure Act ("APA") because the Administrator did not correctly apply the standard set forth in 33 U.S.C. § 1508(a)(2) and because "the agency record did not contain factual evidence that supported the conclusion required for designation of New Jersey as an additional 'adjacent coastal State.'"  (Compl. ¶¶ 55, 57.)  "[W]hen a party seeks review of agency action under the APA . . . [t]he 'entire case' on review is a question of law" and can be resolved on the agency record in the context of a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56.  <u>Am. Bioscience, Inc.</u>

v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001); Univ. Med. Ctr. of S. Nev. v. Shalala, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999); Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1225-26 (D.C. Cir. 1993).  A district court reviewing an agency action under the APA's arbitrary and capricious standard does not resolve factual issues, but instead acts as an appellate court resolving a legal question.  James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1096 (D.C. Cir. 1996) (rejecting appellant's contention that there were fact issues precluding summary judgment, and holding that review of agency action under the arbitrary and capricious standard presents only a legal question).

     "The arbitrary and capricious standard is '[h]ighly deferential,' and it 'presumes the validity of agency action.'" Nat'l Ass'n of Clean Air Agencies v. EPA, 489 F.3d 1221, 1228 (D.C. Cir. 2007) (quoting AT&T Corp. v. FCC, 349 F.3d 692, 698 (D.C. Cir. 2003) (internal quotation marks omitted)).  "The scope of review . . . is narrow and a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "Nevertheless, the agency must [have] examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  Id. (quoting Burlington Truck Lines v. United

-26-

States, 371 U.S. 156, 168 (1962)).  "While [the court] may not supply a reasoned basis for the agency's action that the agency itself has not given, [the court should] uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974) (internal citation omitted). In addition, deference is especially appropriate in areas that are "complex and highly technical."  Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697 (1991).  Further, where a statute is silent or ambiguous on a particular issue and an agency is authorized to promulgate regulations to carry out the statute, a court must defer to the agency's reasonable interpretation of the statute.  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984).

     As a preliminary matter, ASIG contends that the Administrator's February 8, 2008 letter explaining and reaffirming the Administrator's designation is a "post hoc rationalization[] and thus do[es] not provide a basis on which the Court can uphold that decision."  (Pl.'s Reply at 20.)  A court cannot consider post hoc explanations for agency action offered for the first time during a lawsuit challenging the action.  See Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 156 (1991).  However, the February 8, 2008 explanation was issued while the designation decision was still

-27-

under challenge by ASIG in the agency, not after this action had been filed.  If the November 2, 2007 initial designation decision were the sole agency explanation that could be considered here and was found to be inadequate,[4] as ASIG urges, the remedy would be a remand for a fuller explanation.  See Camp v. Pitts, 411 U.S. 138, 143 (1973); La. Pub. Serv. Comm'n v. F.E.R.C., 522 F.3d 378, 400 (D.C. Cir. 2008); Occidental Petroleum Corp. v. SEC, 873 F.2d 325, 338 (D.C. Cir. 1989).  The February 8, 2008 explanation was issued during the pendency of the agency proceedings and reflects a full consideration of the merits of the designation, including assessment of additional information received after the Administrator's November 2, 2007 decision and contemporaneous explanation of the decision to maintain the designation of New Jersey as an adjacent coastal state.  (See R. at 112-17.)  Since it provides the very reasoning that would have been required on a remand, it would waste judicial and agency resources to remand this matter and to ignore the very type of remedial explanation ASIG could have secured from a remand.  The February 8, 2008 letter affirming the New Jersey's designation as an adjacent coastal state, then, will be construed as the final substantive

---

[4]The Administrator alleged in his February 8, 2008 letter that "the statute requires nothing further than a decision be made by the Administrator."  (R. at 115.)  While the DWPA may not specifically require an explanation for a § 1508(a)(2) designation, the APA does require that an agency provide a reasoned basis for its action.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

-28-

designation decision by the Administrator for review under the APA.

Under the DWPA, the Administrator, as the Secretary's delegate, can designate an additional adjacent coastal state "if he determines that there is a risk of damage to the coastal environment of such State equal to or greater than the risk posed to a State directly connected by pipeline to the proposed deepwater port."  33 U.S.C. § 1508(a)(2).  The coastal environment

> means the navigable waters (including the lands therein and thereunder) and the adjacent shorelines including waters therein and thereunder[] [and] [t]he term includes transitional and intertidal areas, bays, lagoons, salt marshes, estuaries, and beaches; the fish, wildlife and other living resources thereof; and the recreational and scenic values of such lands, waters and resources[.]

33 U.S.C. § 1502(5).  The statute does not provide further detail as to how the Administrator must arrive at his determination of the comparative risk posed to the coastal environments of the state directly connected to the pipeline and a state seeking to be designated as an adjacent coastal state.  In light of the Administrator's delegated authority to promulgate regulations, the Administrator's interpretation, if reasonable, must be given deference.

In his February 8, 2008 decision, the Administrator described the statutory standard under § 1508(a)(2) as "an equitable approach" that "evaluate[s] the totality of impacts."

-29-

(R. at 112, 115.)  By contrast, ASIG contends that the
comparative risk standard found in § 1508(a)(2) must be "a
complex undertaking, requiring collection and analysis of
substantial bodies of information."  (Pl.'s Prelim. Inj. Mem. at
30.)  To support its contention, ASIG provides a seventy-five
page report prepared by a Coast Guard contractor in 1976 that
suggests an appropriate methodology for making a comparative risk
assessment.  ASIG does not, however, offer any evidence showing
that the Secretary or the Administrator ever adopted this report
as its interpretation of how an adjacent coastal state
designation must be made.  While ASIG's suggested approach to the
comparative risk assessment may also be valid, the
Administrator's equitable approach is a reasonable one that will
be accorded deference.  Thus, the critical question is whether
the Administrator, utilizing the equitable approach to the
§ 1508(a)(2) standard, articulated a satisfactory explanation for
his choice to designate New Jersey as an additional adjacent
coastal state.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

     The Administrator stated in his February 8, 2008 letter that
his decision that the risk to New Jersey's coastal environment
was equal to or greater than the risk to New York's coastal
environment was based on several considerations.  First, the
Administrator considered New York and New Jersey's "shared
environmental and economic concerns due to their geographic

proximity, predominant ocean currents from NY toward NJ, and common industry." (R. at 113.) The Administrator also considered the staging areas for the Safe Harbor Port's construction, the risk to both states of losing the Cholera Bank fishing area, and the risk and impact of a liquified natural gas explosion or fire. (R. at 113, 115.) Finally, the Administrator considered "the NOAA recommendation, as well as the magnitude and scope of the proposed project." (R. at 114 (internal quotation marks omitted).)

The administrative record reveals support for the Administrator's reasons. New Jersey, a coalition of community groups called Clean Ocean Action with a mission to improve the degraded water quality off the New Jersey and New York coasts, and other interested parties submitted letters in support of New Jersey's designation request that explain the comparative risks to the coastal environments of New Jersey and New York. (See R. at 12-14, 53-56, 64-67, 70-71, 95, 100-10.) First, in its original request and response to NOAA's concerns, New Jersey asserted that the proposed port's location would interfere with the Port of New Jersey and prime fishing areas protected under the state's federally approved coastal environment and because of the "predominant current direction, . . . water quality impacts during construction would move toward New Jersey's waters[.]" (R. at 26.) In addition, Clean Ocean Action explained that the

potential impact on New Jersey caused by a construction spill
could be greater than that on New York because both wind and wave
patterns from the proposed construction site move in the
direction of New Jersey.  (R. at 41.)  Further, in response to
ASIG's request for reconsideration, New Jersey submitted an
additional letter explaining the comparative potential impact on
recreational and commercial fishing industries in both New York
and New Jersey, the risk of impact on New Jersey's water quality,
the possibility that New Jersey ports and other facilities will
be needed to aid in the construction process, the potential
disruption to traffic to New Jersey's ports caused by
construction, and the negative impact that the completed port may
cause to New Jersey's beaches because the port will be visible
from the New Jersey coastline.  (R. at 105-10.)  Ultimately, the
court's limited role on review is only to determine whether the
Administrator considered the available evidence and reached a
decision that is rationally related to the facts contained in the
record.  Under this deferential standard, based on the factual
support contained in the administrative record, the
Administrator's decision was neither arbitrary nor capricious and
will be upheld.

<u>CONCLUSION</u>

     New Jersey has satisfied the requirements under Rule
24(a)(2) for intervention as of right, and its motion to

-32-

intervene will be granted.  The Administrator did have legal
authority to designate New Jersey as an additional coastal state;
the Administrator's decision, if issued outside of the statutory
time frame, still has legal effect; and the Administrator's
decision was not arbitrary or capricious.  Since the material
facts are not in dispute and the defendants are entitled to
judgment as a matter of law, the defendants' motion to dismiss,
treated as a motion for summary judgment, will be granted.  As a
result, ASIG's motion for a preliminary injunction and motions
for hearings will be denied as moot.  Finally, the defendants'
motion for leave to file the declaration of Mark A. Prescott will
be granted.

A final, appealable order accompanies this memorandum
opinion.

SIGNED this 8th day of December, 2008.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge